JENKS, P. J., THOMAS, STAPLETON and RICH, JJ., concurred.

Judgment affirmed, with costs.

---

ALPHEUS P. PERRY, Appellant, *v.* EMMA O. PERRY and GERTRUDE ARLENE PERRY, Respondents.

Third Department, November 10, 1915.

Real property — suit for cancellation of deed — delivery upon condition that deed is not to be recorded until happening of future event — death of grantee before fulfillment of condition — evidence.

Suit brought by a grantor to obtain a decree canceling a deed whereby he conveyed lands to his son. Although the grantor had executed the conveyance he contended that he had never delivered the same to the grantee but had merely given it to the grantee's wife for safe-keeping until such time as he himself should deliver it to his son. It was con-

tended by the defendants, however, that the instrument was placed in the custody of the grantee's wife for delivery to him, the only condition imposed by the grantor being that it should not be recorded until the final determination of an action relating to the lands. On all the evidence, *held*, that the deed was delivered for delivery to the grantee, the record to be postponed until the settlement of the action, and that having been done, the title passed although the grantee had died in the meantime.

Where a condition upon which delivery is made is performed the deed takes effect from the time of first delivery even though the grantee dies before the condition is performed.

APPEAL by the plaintiff, Alpheus P. Perry, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Essex on the 2d day of February, 1914, upon the report of a referee appointed to hear and determine the issues.

*Fred M. La Duke* [*Nelson L. Robinson* and *Francis X. Henessey* of counsel], for the appellant.

*Spencer G. Prime, 2nd,* for the respondents.

Judgment unanimously affirmed, with costs, on the opinion of BERNE A. PYRKE, Referee.

The following is the opinion of the referee:

BERNE A. PYRKE, Referee:

This action involves the question of the delivery of a deed. The premises affected by the deed are a farm of several hundred acres in the town of Wilmington, Essex county, N. Y.

The plaintiff for several years prior to October 25, 1909, owned the farm. On that day he caused a deed of the farm to his son Sidney D. Perry to be prepared by an attorney at Lake Placid, and when prepared executed it. In this deed he excepted the dwelling house, and reserved to himself the life use of an undivided half interest in the property conveyed. He was about seventy years of age at the time, and a widower. The son was about thirty years of age. At the time he was living with this son and his son's wife in a house owned by the son in the neighborhood of the farm. He had other children but they were apparently away from home. The son had

employment at Lake Placid, and on account of that employment was at home infrequently.

Previous to the execution of this deed the plaintiff had made a claim against the J. & J. Rogers Company for damages to the farm, and suit upon that claim had been contemplated but not brought. His attorney in the matter was Samuel A. Pulford. Mr. Pulford was also the draftsman of the deed. At the time of the preparation of the deed Mr. Pulford warned the plaintiff against delivering it on account of the detrimental effect upon the contemplated suit, and suggested to the plaintiff that he leave the deed in the attorney's safe. This the plaintiff declined to do, and left taking the deed with him. On his return to Wilmington the son was not at home. The following morning he handed the deed to the son's wife.

Whether that delivery was for the benefit of the grantee or for safekeeping is the crucial point in the case.

Up to this period there is no dispute in the record. What occurred in connection with that delivery is sharply disputed. The only persons present at the time were the two principals, the plaintiff and his daughter-in-law. All the testimony as to what was said and done comes from them, and as both are vitally interested their testimony must be scrutinized with care.

Whether there was a delivery at this time depends upon the intention of the grantor, but that intention naturally must be determined from his acts and words at the time rather than from his present statement of his intention. His testimony in substance is that he handed the deed to his daughter-in-law with instruction to keep it until it was called for by him to be delivered to his son; that he told her that he could not deliver it then, because of the controversy with the Rogers Company, and to keep the deed until the matter was settled, and as soon as it was settled he would deliver the deed to his son. He stated upon the stand that it was his intention that his son should have the farm, and that the only reason why the deed was not delivered to him at the time was because of the pending trouble with the Rogers Company.

Mrs. Perry's testimony is sharply opposed to the plaintiff's. Her version is that a few days prior to the execution of this deed her husband was at home, and there was a talk between

herself, her husband and the plaintiff in regard to her and her husband moving back to another home which they owned in Lake Placid; that the plaintiff said that he did not want to leave Wilmington, and if his son and daughter-in-law left home no one would be with him, and that he wanted his son to sell the property at Lake Placid, and that if the son would pay the mortgage on the farm he would give him a deed of the property, and the son replied that he would do it as soon as the deed was in his possession, and the plaintiff said he would make a deed and went to Lake Placid for the purpose. On his return from Lake Placid he handed her the deed, stating, "Here is the deed of this property that I have had made out. Take it and take care of it." A few days later the son came home, and he and his father went over the deed together, reading it over, and the plaintiff said not to have the deed recorded until after the law suit was ended, as he did not want the company to know that the title was not in his name.

It is undisputed that the deed remained in the possession of Mrs. Perry unrecorded from this time until after the death of her husband and the settlement of the Rogers action. Shortly before the commencement of the present action she caused it to be placed upon record.

Aside from the testimony of the two principals to the transaction there are but a few circumstances that throw any light upon the intention of the grantor as to delivery. Ordinarily in cases of this kind the subsequent attitude of the parties towards the possession of the property would be quite helpful in determining the question of whether or not there was a delivery, but in this case the testimony as to the possession is somewhat equivocal, but so far as it is indicative of anything, it tends to substantiate the defendant's contention respecting delivery. Since the making of the deed the farm has been carried on by third parties on shares, and in two of the intervening years at least Mrs. Perry has had a share of the farm products. But it also appears that in the year preceding the making of the deed the plaintiff allowed his son, though having no ownership in the property, to have a share of the produce.

A straw pointing to a delivery of the deed is the undisputed circumstance that shortly after the execution of the deed

Sidney D. Perry sold his home at Lake Placid and paid up the mortgage on the farm. This is quite significant of an understanding on his part that he had acquired a certain present interest in the farm.

If the plaintiff's version upon the stand of the transaction when the deed was passed to Mrs. Perry is true, then there was no delivery, but I am unable to reconcile this testimony with the probabilities of the situation. The plaintiff gave no persuasive explanation of his reasons for executing a deed if no delivery was contemplated. The only explanation that he attempted was: "Well, I was there and talking with Mr. Pulford, and told him what my intention was and asked him if he has a blank, and he said he had, so I had him make the deed. He advised me not to have it done then, but I said 'I am here and don't know when I will be up again, and you can make it out and have it done with, and when the time comes I will give it to him.'" Then, again, I find it difficult to believe that if the plaintiff's intention was not to deliver the deed at the time, but simply to place it for safe-keeping, he would select the wife of the grantee as custodian. He rejected the offer of the attorney's safe as a place of custody. There is no proof of a degree of confidence existing between the plaintiff and his daughter-in-law that would induce him to select her as the custodian in preference to his attorney. It is obvious that the risk of a misdelivery was much greater with the wife of the grantee as custodian than if his attorney occupied that position.

While the case is not free from doubt, I think the preponderance of evidence is to the effect that the deposit of the deed with Mrs. Perry was for the use of the grantee; that the delivery was irrevocable, the plaintiff reserving no control or dominion over it. While I am satisfied as to this, I believe that there were conditions attached to the delivery, but that those conditions had for their purpose the shielding of the transaction from publicity and did not affect the irrevocability of the delivery. I do not think it reasonable that with his attorney's warning sounding in his ears the plaintiff would make a direct and unconditional delivery to the grantee. It is not clear from the evidence whether the condition was

simply that the transaction should be kept private and the deed withheld from the record, or that the deed should be retained by Mrs. Perry until the termination of the Rogers Company controversy, and then be delivered by her to the grantee. I do not regard it as necessary for the decision of this case to make a determination as to the conditions. If I am right in my view that there was an irrevocable delivery to Mrs. Perry for the use of the grantee, the grantor surrendering all dominion and control over the deed, this action must fail. (*Church* v. *Gilman*, 15 Wend. 656; *Crain* v. *Wright*, 36 Hun, 74; 114 N. Y. 307; *Yutte* v. *Yutte*, 39 Misc. Rep. 272.)

If the fact is, as seems probable, that the deed was placed in Mrs. Perry's hands for delivery to the grantee upon the settlement of the Rogers action, title is now in the defendants, because the contingency contemplated occurred prior to the commencement of this action, and the death of the grantee in the meantime does not affect the situation.

Cyc. states the rule as to the effect of the death of the grantee upon an escrow, as follows: "If the grantee die before final delivery, the depositary may make delivery to the grantee's heirs and it will be held ordinarily to have taken effect in the ancestor so as to transmit title through him to the heirs by inheritance, where nothing intervenes to prevent." (16 Cyc. 589.)

The doctrine just stated seems to be the law of this State.

"It is a well-settled rule with respect to an escrow, that if either of the parties die before the condition is performed, and afterwards the condition is performed, the deed is good, and will take effect from the first delivery. * * * It may, however, be questionable whether this deed is to be viewed as an escrow; the grantees had nothing to do on their part, in order to make the deed absolute, which is usually the case where a deed is delivered as an escrow. The delivery here was, at all events, conditional, and to become absolute upon an event which has taken place; and, as in the case of an escrow, the deed will take effect from the first delivery." (*Ruggles* v *Lawson*, 13 Johns. 285, 286.)

"The rule is well settled that when a deed is at first delivered to a third person as an escrow, such delivery is good and

valid, and vests the title on the performance of the condition, or happening of the specified contingency, and, therefore, if either of the parties dies before the condition is performed, and the condition is afterwards perfected, the deed avails." (*Hunter* v. *Hunter*, 17 Barb. 82.)

"It is settled by authority that in such case the death of any of the parties before delivery to the grantee will not defeat the validity of the deed." (*Webster* v. *Kings County Trust Co.*, 80 Hun, 420, 426. See, also, *Tracy* v. *Snowden*, 23 Wkly. Dig. 41.)

In conclusion, it seems to me that in any permissible view of the evidence the conditions attached to the delivery of this deed have been met and that title is now vested in the defendants, and that the plaintiff is not entitled to a cancellation of the deed.