BENJAMIN SELIGSON and Another, Respondents, v. NATHAN WEISS and Another, Appellants.

First Department, March 2, 1928.

Partnership — joint venture — action for accounting — defendants procured transfer of plaintiffs' interest through fraudulent representations — giving plaintiffs slight profit on transaction does not bar right to accounting — action not barred by laches.

A judgment in favor of the plaintiffs compelling the defendants to account for profits realized on property formerly held by the parties to the action in joint venture is affirmed, since it appears that the plaintiffs submitted the absolute control of the property to the defendants; that one of the defendants, the

husband of the other, was experienced in real estate; that he fraudulently represented that the third mortgage on which he had willfully permitted a default could not be renewed; that he wanted to save the plaintiffs harmless; that he could not raise his half of the third mortgage, though at the time he could have obtained the money from his brother-in-law; that subsequently he represented that his brother-in-law would purchase the property for a corporation he represented; that a deed was executed by the plaintiff with the name of the grantee blank; that thereafter the name of the defendant wife was inserted and later she transferred to the defendant husband. It also appears that the property had increased greatly in value. The facts show a clear case of fraud practiced by the defendants on the plaintiffs.

The mere fact that when the fraudulent transfer was made the defendants paid to the plaintiffs the amount they invested and a small profit besides, does not bar the plaintiffs from maintaining this action for an accounting.

The defense of laches, raised for the first time on appeal, cannot be considered. However, if considered on the merits it cannot stand since it appears that while the plaintiffs waited two years after discovering the fraud, the defendants have not through such delay been prejudiced in any way. The property had been sold by the defendants at the time the fraud was discovered.

PROSKAUER, J., dissents.

APPEAL by the defendants from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 16th day of May, 1927.

*Martin H. Young* of counsel [*Louis Rosenberg,* attorney], for the appellants.

*Max A. Slavin* of counsel [*Slavin & Leichtman,* attorneys], for the respondents.

FINCH, J. The judgment appealed from should be affirmed. The plaintiffs have recovered a judgment in equity, compelling the defendants to account for profits derived by them from an apartment house which formerly was owned as a joint venture by the parties to the action. The court, upon a trial, has found that the plaintiffs were fraudulently induced to sell their interest in said property to the defendants. Upon this appeal the defendants urge that the finding of the trial court is against the weight of the evidence and that the right to relief is barred by the laches of the plaintiffs in bringing the action. Neither of these objections is well taken.

It appears from the evidence and the fair inferences from the evidence that in April, 1919, the parties purchased an apartment house and title was taken in the names of the respective wives. The plaintiffs were engaged in the actual running of a small restaurant which they owned, while the defendant Nathan Weiss was in the business of leasing houses and, because of his long experience in real estate, took complete control of the running of the

partnership property. The plaintiffs were ignorant of the interest or due dates of the mortgages covering the premises and all other carrying charges, and only one of the plaintiffs ever visited the premises and then only twice. The defendant Nathan Weiss intentionally failed to pay an installment on account of principal of the third mortgage with interest and, after the expiration of the grace period, informed the plaintiff Benjamin Seligson that he had failed to make payment of the installment, that the grace period had expired and that, despite all he could do to induce the mortgagee to waive the default, the latter was foreclosing. In order to throw the plaintiffs more completely off their guard, Weiss told the plaintiff Benjamin Seligson that the failure to pay the installment was his, defendant Nathan Weiss', fault and that plaintiffs should not worry because he, Weiss, would safeguard plaintiffs' interests. Plaintiff Benjamin Seligson offered to raise his one-half of the balance due on account of the third mortgage and urged Weiss to try to raise the other half, but Weiss falsely said that he was unable to raise his share. Previous to this Weiss had already seen Horowitz, his brother-in-law, who was willing to allow Weiss the amount necessary to pay the whole of the third mortgage. Weiss then told plaintiffs that he had a purchaser ready to buy the premises and that that was the only way to save plaintiffs' money, which Weiss said was his only concern and that he, Weiss, did not care what happened to his own money. Weiss and Horowitz then called at the home of the plaintiffs. Plaintiff Harriet Seligson was critically ill following childbirth. Weiss told plaintiffs that Horowitz was purchasing the premises for one of his corporations, and Weiss obtained a deed signed by plaintiff Harriet Seligson with the grantee's name in blank. A check for $5,000, signed by one of Horowitz's corporations, was then given to plaintiffs, Weiss having first, unknown to plaintiffs, delivered to Horowitz his checks for $3,000 and $2,000 respectively. This $5,000 represented repayment of the cash advanced when the premises were purchased and $1,500 profit. Much is made by the defendants, in seeking to reverse, solely upon the facts, the judgment of the trial court, because Weiss gave the plaintiffs the amount which they had paid, together with what Weiss termed " a little profit." This was the period of rapidly advancing prices due to the abundance of war money, and it appears that Weiss in replacing the first mortgage had ascertained that the premises had been appraised at the instance of the first mortgagee for $63,000. Thus these premises already showed a profit over the purchase price of approximately $16,000, and the rent roll was rapidly rising from $8,000 to $13,000, showing that the real value of the premises was steadily mounting, as proven by a sale by Weiss

for $81,000 some four years later. Returning to the chronological recital of the happenings, Weiss concealed the fact that he himself was the real purchaser and not Horowitz, as Weiss had led the plaintiffs to believe, and on the same day the name of Weiss' wife was inserted in the deed as grantee after Horowitz and Weiss had left the house of the plaintiffs and without the knowledge or consent of the latter. Martha Weiss gave her husband no consideration for the conveyance and no foreclosure proceedings were ever instituted by the third mortgagee. Weiss procured Horowitz immediately to take an assignment of the third mortgage, and a few months later Weiss took from his wife a conveyance in his own name.

The rule is clear that one partner may not acquire any benefit for himself as against his copartners, unless with their full knowledge and consent. In the case at bar Weiss went further, and a clearer case of one partner acquiring partnership property by means of active fraud practiced against the other, it seems difficult to imagine. We are asked, however, to set aside a finding by the trial court to this effect as being against the weight of the evidence chiefly because of two facts. The *first* is because when Weiss acquired the premises for himself, unbeknown to his partner, the latter received a small part of the profit he should have received over the purchase price; and, *second,* because, after learning of the fraud, he did not rush into litigation at once. We have already shown the real value of the premises at the time of the sale to Weiss as compared with the smallness of the profit allowed to plaintiffs. We now take up the question, urged for the first time upon this appeal, that the plaintiffs were guilty of laches in bringing this action. The first answer is that no defense of laches was pleaded in the answer and there is apparently not a word concerning laches in the record of the trial, certainly no objection based upon this ground called to the attention of the trial justice, so that so far as the latter is concerned, he may rightly have assumed that the respondents waived any defense based thereon. In fairness to the trial justice, this is the kind of objection which, if not taken at the trial, should not be permitted to be raised for the first time upon appeal. Even if we consider, however, this defense of laches upon the merits, it cannot prevail. No laches could arise until the plaintiffs knew of the fraud, and this was not until they had learned that they had been tricked into selling to their coadventurer by noticing the sale by him in the newspaper. It is true that the plaintiffs thereafter waited two years before starting this action, but their right of action was not barred, since the ten-year Statute of Limitations applied to this breach of trust. Only by showing a change of position on the part

of the defendants, directly based upon the laches of the plaintiffs, could the defendants shorten the time allowed by statute within which the plaintiffs might bring this action. It is well settled that delay in and of itself is not sufficient to constitute a bar. There must be, in addition, such a change of situation as to make it inequitable to grant the relief sought. As was said by Judge FOLGER in *Matter of Lord* (78 N. Y. 109, 111): " What length of neglect to enforce a right will bring a case under the operation of this rule, may not be abstractly determined. Regard must be had to all the circumstances of the case, especially to such as show a change in property, or the relative position of parties or persons interested or affected."

In Pomeroy's Equitable Remedies (Vol. 1, § 21) the doctrine of laches is defined as follows: " The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living Judge:

" ' Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief.' " (Quotation from *Chase* v. *Chase*, 20 R. I. 202, per STINESS, J.)

In the case at bar there was no change of situation after the discovery of the facts by the plaintiffs. At that time the property had been sold and the rights of the parties in the proceeds were then fixed. It follows that any subsequent delay in the institution of the action is subject only to the statutory period of limitations.

The judgment appealed from should be affirmed, with costs.

DOWLING, P. J., MERRELL and MCAVOY, JJ., concur; PROSKAUER, J. dissents.

Judgment affirmed, with costs.