Harold Baer, J.
This action was tried before the court without a jury. Formal findings of fact and conclusions of law were waived.
This case was tried previously and the judgment reversed (Prouty v. Drake, 4 A D 2d 864). The evidence adduced at the first trial, set forth in the printed record, was admitted by consent as the evidence in the current trial. Additional documents, part of the matrimonial action between the parties in New Jersey, were also admitted into evidence.
The parties were divorced in the State of New Jersey in 1942. An interlocutory decree was entered on March 23, 1942 and the final decree was entered on June 24,1942. Attached to the decree there was a stipulation of agreement whereby, among other things, defendant was to pay $63 per week alimony. However, it was further provided that such payments or any other payments were to be credited against a total obligation of $10,000 representing advances made during the marriage of the parties by the plaintiff to the defendant. Further, in the event of the remarriage of the plaintiff, the. payments on account of said $10,000 were to be paid in ‘ ‘ such installments as are reasonable under the then existing circumstances not to exceed $25 weekly ”. In addition to the monetary provisions of the stipulation, defendant agreed to “ constitute the petitioner the irrevocable beneficiary ” of a then existing $10,000 life insurance policy on defendant’s life and to pay the premiums thereon.
There are certain facts to be assumed either because stipulated or uncontroverted in the record. In October, 1942, the alimony provisions of the decree were reduced to $30 monthly retroactive to May 10, 1942. The plaintiff remarried in May, 1943. The defendant entered the armed services in May, 1942, left the State of New Jersey and never resided there again. He became a resident of the State of New York in 1948. The plaintiff received from the defendant either as alimony or payments to liquidate the $10,000 obligation a total of $1,516, the last payment having been made in July, 1950. The last insurance premium was paid in August, 1942 and the policy lapsed in Decern *890 ber, 1942. The plaintiff had possession of the policy as of the time of the signing of the aforesaid stipulation agreement.
The plaintiff saw the defendant in California in 1947, at which time, in addition to making a payment on account of the $10,000 obligation, he informed her that the policy referred to in the stipulation had lapsed.
The plaintiff seeks the following relief: A decree ordering the payment of the balance of the $10,000 due her, to wit: $8,484 plus interest, and a direction that the defendant deliver to the plaintiff an insurance policy on his life in the amount of $10,000, with plaintiff as irrevocable beneficiary thereof; and that the defendant pay the premiums thereon.
The defendant, in his answer, pleads affirmatively the Statute of Limitations as to both branches of the relief sought by the plaintiff, and laches.
In unanimously reversing the judgment on the first trial the Appellate Division, in its memorandum opinion, accepted the trial court’s finding that the stipulation referred to did not become part of the New Jersey decree; that the present action may not be maintained as a suit upon the New Jersey judgment; that the stipulation may be sued upon as an independent contract ; and that a decree enforcing the stipulation in respect to the payment of the balance due on the debt of $10,000 may be entered. Further, that a direction for the maintenance of an insurance policy could also be made (Prouty v. Drake, 4 A D 2d 864, supra).
I shall treat the question of the insurance policy first and then proceed to the alleged balance due on the $10,000 obligation.
Insofar as defendant’s affirmative defense of the Statute of Limitations is concerned, it is untenable in this situation. The defendant entered the armed services in 1942 and did not take up residence in this State until 1948. The action was commenced in 1955. Since this action is in equity the 10-year statute controls (Civ. Prac. Act, § 53; Gilmore v. Ham, 142 N. Y. 1; Treadwell v. Clark, 190 N. Y. 51; Keys v. Leopold, 241 N. Y. 189). Hence, the statute is no bar to the action.
A different situation is presented insofar as the defense of laches is concerned. Laches is defined as “ such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity”. (2 Pomeroy, Equity Jurisprudence [5th ed.], § 419, pp. 171-172.) It is, “ an unexeused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to dis *891 place such adverse rights for the benefit of those who are bound oy the delay ” (30 C. J. S., Equity, § 112, p. 521).
Laches, a defense peculiar to the courts of equity, is founded on lapse of time and intervention of circumstances even within the period prescribed by the Statute of Limitations that render it unjust on equitable principles for a court of equity to assist a plaintiff (Groesbeck v. Morgan, 206 N. Y. 385, 389; Feldman v. Metropolitan Life Ins. Co., 259 App. Div. 123).
The underlying basis of the defense of laches is that the plaintiff has unreasonably and inexcusably delayed to the prejudice of the defendant and by so doing has worked a disadvantage or injury to the defendant (Seligson v. Weiss, 222 App. Div. 634, 638). There is no more established principle that equity, as a prerequisite to its intervention, requires that a party shall have acted with reasonable promptness in presenting his claim for relief, having regard for the circumstances of the particular case. The doctrine of laches is a salutary one, designed to bar stale demands, the enforcement of which would result in inequity (Groesbeck v. Morgan, supra; Feldman v. Metropolitan Life Ins. Co., supra; 2 Pomeroy, Equity Jurisprudence [5th ed.], § 418 et seq., p. 169 et seq.).
Here, the plaintiff, in effect, slept upon her rights from as early as 1942, and surely since 1947 when she saw the defendant in California. She had the policy and should have known that it had lapsed in 1942. She admits that in 1947 she was advised of the fact that the insurance policy had lapsed. It would be patently unjust and inequitable for a court of equity to come to her assistance in 1955 (when she commenced the action), when the circumstances of the defendant had so radically changed. Surely, even if he were insurable, the premiums for a policy at his age in 1955 would be so much greater than in 1942, or even in 1947 as to constitute a great hardship to the defendant if he were required to obtain a policy at this time.
Accordingly, the plaintiff’s prayer for relief insofar as the insurance policy is concerned is denied.
I now come to the question of the alleged balance due on the $10,000 indebtedness and the availability and application of the defense of the Statute of Limitations.
This is an action on a contract. Hence the six-year statute is applicable (Civ. Prac. Act, § 48). Since the cause of action arose in New Jersey, it would be well to turn to the statutes of that State to see what effect, if any, they may have on the outcome (Civ. Prac. Act, § 13; Matter of Tonkonogoff, 177 Misc. 1015). There, as here, there is a six-year statute for actions on contracts (N. J. Stat., § 2A:14-1). There, as here, absence from *892 the State after the cause of action arises operates to toll the statute (N. J. Stat., § 2A:14-22; Civ. Prac. Act, § 19).
The defendant admittedly left New Jersey some time in 1942 and as far as the record in this case indicates has been absent from that State to date. Hence, the New Jersey statute is no bar to the action here (National Sur. Co. v. Ruffin, 242 N. Y. 413; Civ. Prac. Act, §§ 13,19).
The statute did not begin to run in this State until 1948 when the defendant first took up residence here (Matter of Quirk, 150 Misc. 915). The plaintiff, despite her nonresidence, is entitled to enjoy the protection of the tolling provisions of section 19 of the Civil Practice Act (Meyers v. Credit Lyonnais, 259 N. Y. 399, 403).
The defendant admittedly made payments to the plaintiff on account of the $10,000 indebtedness in 1949 and again in 1950.
I find from the evidence in this case that the payments made by the defendant to the plaintiff in 1949 and 1950 were intended as part payments on the claim in suit. As such, they operated to revive the debt and take this case out of the "operation of the statute pursuant to section 59 of the Civil Practice Act (Crow v. Gleason, 141 N. Y. 489; Matter of Fitch, 270 App. Div. 227; 54 C. J. S., Limitations of Actions, § 397, p. 544 et seq.).
It should be noted- in passing that under the New Jersey statutes the result would be the same (N. J. Stat., § 2A:14-24; Trenton Banking Co. v. Rittenhouse, 96 N. J. L. 450).
The final facet of the defense of the Statute of Limitations concerns itself with whether the contract is one payable in installments. An examination of the stipulation and the documents from the New Jersey Chancery Court introduced into evidence leads me to the conclusion that it is not.
This is not an action on a unilateral money obligation payable in installments (cf. True v. Brainard, 134 Misc. 70), or on a support agreement which provides for fixed payments at fixed time intervals (cf. Sommer v. Sommer, 94 N. Y. S. 2d 23, affd. 277 App. Div. 998), where the statute runs on each installment or payment as it falls due. On the contrary, there are no fixed amounts provided for herein. While the stipulation refers to installment payments, it specifically provides for “ such installments as are reasonable under the then existing circumstances, not to exceed $25 a week
Under the terms of the stipulation the provision for paying installments on account of' the $10,000 indebtedness became operative when the defendant was relieved from paying alimony. An order vacating and annulling the alimony provisions contained in the decree nisi was signed and entered December 14, *893 1943. Since 1943 no order has been entered fixing the defendant’s obligation under the stipulation or have the parties at any time prior to the commencement of this action agreed as to what would be reasonable. For the foregoing reasons the defense of the Statute of Limitations must fail.
The defense of laches must similarly fail. Unlike that branch of relief dealing with the insurance policy, there is no showing here, of such disadvantage worked by the delay, as to prevent this court from affording the plaintiff relief (Groesbeck v. Morgan, 206 N. Y. 385, supra; Seligson v. Weiss, 222 App. Div. 634, supra).
Accordingly, the plaintiff is entitled to the sum of $8,484 ($10,000 less $1,516, the agreed amount paid on account). It would be inequitable, if not improper, to give the plaintiff judgment for the full amount at this time. Prior to the commencement of this action the extent of the defendant’s obligation to pay on account of the $10,000 indebtedness was neither fixed by any court nor agreed upon by the parties. This court must fix the reasonable amount of such payments.
The parties have stipulated that for the purposes of this trial $25 a week would be reasonable. Accordingly, the plaintiff is entitled to receive $25 each week from the defendant commencing immediately and continuing until the full sum of $8,484 is paid. Under the circumstances hereinabove outlined, the plaintiff is not entitled to interest. I would have directed that the weekly payments be paid retroactively from the date of the commencement of the action if it were not for the fact that a direction to pay interest would have been mandatory (Manufacturers Trust Co. v. Gray, 278 N. Y. 380; Civ. Prac. Act, § 480). If the plaintiff will waive interest she may have immediate judgment for $5,100 and a direction that defendant pay the balance of $3,384 in weekly payments of $25 commencing March 2, 1959.
Submit decree on notice.