Clare J. Hoyt, J.
Petitioner, a resident, taxpayer, and owner of real property in the City of Yonkers brings this proceeding under article 78 of the Civil Practice Act to compel the Commissioner of Public Safety of said city to appoint from a certified list created by the Yonkers Municipal Civil Service Commission a Chief of Police of the City Police Department and to compel the Common Council, the Mayor and Manager of said city to make budgetary provisions for the payment of an appropriate salary.
The relief sought is granted and the respondents are directed to comply.
In 1947 upon the death of the incumbent, the office of Chief of Police became vacant. The incumbent held office with civil service tenure and qualified therefor as a candidate in a civil service examination.
In 1947 after this vacancy arose, the City Manager and the Commissioner of Public Safety gave a lieutenant in the police force the title “Deputy Commissioner of Public Safety ”, a salary of $6,000 per annum, a leave of absence from his position as police lieutenant, which position was unfilled and remained vacant except for the leave of absence. The lieutenant so appointed continued to occupy the position of Deputy Commis *610 sioner of Public Safety until 1952 when he was succeeded by the present appointee, a captain in the Police Department, who continues to serve as Deputy Commissioner of Public Safety.
This Deputy Commissioner of Public Safety acts as the ranking and commanding officer of the uniformed and detective forces of the police bureau and is responsible for the enforcement of all the laws and ordinances within the jurisdiction of the police bureau. Other duties and powers in connection with the police department have been admitted by respondents to repose in him so that he has the same powers and duties as those prescribed for the office of Chief of Police (Department of Public Safety Rules and Regulations of Police Bureau, rule 9, dated October 1, 1947). Each year for two weeks this Deputy Commissioner of Public Safety reverts to the status of police captain.
The petitioner alleges that the failure to appoint a successor to the Chief of Police and the appointment of an additional Deputy Commissioner of Public Safety who serves at the pleasure of the Commissioner of Public Safety with a salary comparable to that of the 'Chief of Police, and with an assignment of duties identical with those previously performed by the Chief of Police, is a device or artifice to avoid the appointment of a Chief of Police who would enjoy the tenure provided by section 130 of the Second Class Cities Law.
Section 130 of the Second Class Cities Law mandates the appointment of a Chief of Police when a vacancy occurs: “ Whenever a vacancy occurs in the office of the chief of police * * * the commissioner of public safety, shall appoint, in his discretion, a person deemed by him to be suitable and competent to fill the same. The chief of police * * * shall * * * hold office during good behavior, or until permanently incapacitated or unfit to discharge his duties.”
The effort of the Commissioner of Public Safety to satisfy this statutory requirement by the appointment of a Deputy Commissioner of Public Safety and cloaking him with the duties of a Chief of Police is in violation of the statute and not a valid substitute for it.
Section 130 also provides for the tenure of a Deputy Commissioner of Public Safety: “ The commissioner of public safety * * * may appoint, to hold office during his pleasure, a deputy ’ ’.
There is thus a substantial difference in the tenure of the two positions, that of 'Chief of Police guaranteed during good behavior and so long as he is able and fit to discharge the duties, and that of the deputy with no tenure, serving at the pleasure of the Commissioner. More than this, the statute (Second Class *611 Cities Law, § 141), providing for the office of Chief of Police, sets forth his powers and duties, and directs that he “ perform such other duties as may be prescribed by law, the commissioner of public safety, or ordinances of the common council ’ ’.
Section 130 prescribes the duties of the Deputy Commissioner of Public Safety: “ In case of the absence or disability of the commissioner or a vacancy in the office, the deputy shall discharge the duties of the office until the commissioner returns, his disability ceases or the vacancy is filled. ’ ’
Section 131 of the Second Class Cities Law must be read with section 130 to determine the duties of the Commissioner. “ The commissioner of public safety shall have cognizance, jurisdiction, supervision and control of the government, administration, disposition and discipline of the police department, fire department, buildings department and health department ”.
The attempt herein to dispense with a Chief of Police and have his duties performed by a Deputy Commissioner of Public Safety is in violation of the statute and clearly not in accord with the organization of the Department of Public Safety and the functioning of the Police Department as envisioned by the Legislature.
By virtue of the provisions of the Municipal Civil Service Rules of the City of Yonkers which under section 20 of the Civil Service Law are given the force of law, the position of Chief of Police is in the classified service and may be filled only by a person certified by a civil service examination. This insures the appointment of a well-qualified person and, in view of the legislative mandate, prevents his dismissal without cause.
The respondents seek a dismissal of the petition on several grounds: that the office of Chief of Police was abolished in 1948 and that the application is thus not timely; that the appointment is discretionary; that petitioner has failed to show a demand made for the relief sought; that no harmful effects have been shown to have resulted from the failure to appoint a Chief of Police; and that the petitioner is guilty of laches.
None of these objections are well taken. The office of Chief of Police was not abolished simply by providing in annual budgets no salary allowance for the office. The position having been created by statute, and the salary having been fixed by local law, it could not be abolished by special ordinance (N. Y. Const., art. IX, § 12; City Home Rule Law, § 21, subd. b.).
The petitioner as a citizen of the City of Yonkers is qualified to bring this proceeding without showing any further interest. “ [T]he remedy of mandamus is available to any citizen to hold [a public officer] to the performance of his duty”. (Southern *612 Leasing Co. v. Ludwig, 217 N. Y. 100, 104.) (See, also, People ex rel. Hotchkiss v. Smith, 152 App. Div. 514, 517, mod. on other grounds 206 N. Y. 231.)
The failure to make a demand upon respondents is not fatal to petitioner’s application. In People ex rel. Hotchkiss v. Smith (supra), the court, confronted with an application for mandamus where there had been no demand, reasoned that it was permissible to assume that respondents would have refused to perform if demanded to perform. This same assumption can be made here where the respondents have failed for this long period to appoint a 'Chief of Police and provide for him in current budgets.
Lastly, the defense of laches is ineffective. The failure to appoint a Chief of Police has resulted in a continued violation of the statute directing such appointment and service thereunder. The respondents have not shown any damage or change of position on their part from the failure of petitioner or anyone else to make this application at an earlier date (see Seligson v. Weiss, 222 App. Div. 634).