In the Matter of NEW YORK STATE OSTEOPATHIC SOCIETY, INC., Respondent, v. JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, et al., Appellants; STANLEY JOSEPHS et al., Intervenors-Appellants.

Third Department, December 13, 1968.

*Robert D. Stone* (*Elizabeth M. Eastman* and *John P. Jehu* of counsel), for appellants.

*Bernard Bienstock* (*John R. Davison* of counsel), for intervenors-appellants.

*Wolf, Haldenstein, Adler, Freeman & Herz* (*David A. Ruttenberg* of counsel), for respondent.

GABRIELLI, J.  This is an appeal from a judgment of the Supreme Court at Special Term, entered November 30, 1967 in Albany County, which granted petitioner's application in a proceeding under article 78 of the CPLR, directing the respondents Commissioner of Education and Board of Regents (1) to cancel, revoke and rescind '' M.D.'' inscriptions on the licenses of cer-

tain physicians and surgeons and (2) to order recipients of such "M.D." inscriptions to remit their licenses for such deletions.

The intervenors are 11 of the 47 physicians practicing in New York State, who graduated from the College of Osteopathic Physicians and Surgeons in Los Angeles, California (hereinafter referred to as COP&S) prior to 1962, where they had pursued an in-course academic program of study and instruction in osteopathic medicine, authorizing them to earn only the degree of Doctor of Osteopathy, being the only degree which the college was authorized to confer. Upon passing medical examinations in New York State they were issued licenses containing the inscription "D.O." pursuant to the mandate contained in subdivision 3 of section 6512 of the Education Law.

In 1962 following appropriate legislation COP&S was converted into a nonosteopathic medical school known as the California College of Medicine. Additionally, it was provided that thereafter the school would be empowered to grant only M.D. degrees and *California-licensed* physicians with licenses bearing D.O. inscriptions were required to choose whether to continue with such licenses or renounce the use of the inscription and receive, upon proper application, an M.D. degree, from the California College of Medicine. The intervenors thereafter submitted their California licenses to the newly named college and had their D.O. degrees *changed* to M.D., following which they submitted their New York licenses bearing D.O. inscriptions, along with their newly acquired M.D. diplomas to appellants and requested that an M.D. inscription be added to their licenses, and their names be entered in the registry of New York M.D.s. Complying with the request, their licenses were amended so that the applicant's name was followed by the inscriptions "D.O., M.D.".

Petitioner-respondent, after an appropriate demand upon and refusal by the Commissioner and Board of Regents, commenced this proceeding for a judgment (a) directing them to cancel, revoke and rescind the M.D. inscriptions on licenses granted to those graduates of COP&S who subsequently were given the M.D. degree by the California College of Medicine, as well as (b) directing the return of the newly-amended licenses in order to delete the M.D. inscription, and (c) to restrain the Commissioner and Board of Regents from granting any similar M.D. inscriptions in the future.

Turning first to appellants' contention that petitioner lacks standing to bring this proceeding, the stipulation of facts recognizes that the petitioner is the official spokesman for the osteopathic profession in New York, that it was organized by the members of that profession, with one of its avowed purposes, "to

promote, protect and subserve the best interests of the science and profession of osteopathy ''; and it is further conceded that the petitioner has a vital interest in actions relating to the '' profession and the public in the area of health and welfare ''. These stipulated facts further clearly demonstrate that if the action taken by the Commissioner and Board of Regents '' was wrongful and in excess and disregard of their statutory authorization, then such action involves matters of public concern and is unfair and discriminatory to members of the osteopathic profession '' and, further, that such action would mislead the public and be detrimental to the osteopathic profession in general. We cannot, therefore, agree that petitioner does not have standing to bring the proceeding (*Matter of Kornbluth* v. *Rice,* 250 App. Div. 654, 656, affd. 275 N. Y. 597).

Turning to the basic relief sought by the petitioner our attention is first drawn to those statutory enactments which would be declarative not only of the restrictions imposed upon appellants but also of the public policy of the State and, in search therefor, we note the provisions of subdivision 3 of section 6512 of the Education Law which directly apply to the intervenors (and others similarly situated) since they have prepared themselves in the science of osteopathic medicine, having graduated from a college of osteopathy, and which section states, in pertinent part, that: '' 3. Graduates of colleges of osteopathy registered by the New York state education department who pass the medical licensing examination of the state of New York shall be issued a license to practice medicine and surgery. *A license so issued shall contain thereon, following the name of the licensee, the letters D.O.''* (Emphasis added.) It is evident that the public policy of this State is to recognize a distinction between those who have pursued a course of study and have been trained in osteopathic medicine and those who have been trained in allopathic medicine; and in dealing with these distinctions, the court in *Matter of Kurk* v. *Medical Soc. of County of Queens* (24 A D 2d 897, 898, affd. 18 N Y 2d 928) said: '' The differing licenses serve to apprise the public of the differing training of the licensee ''.

We are mindful of the argument advanced by appellants regarding certain similarities of training between graduates of osteopathic and allopathic colleges but we must be further mindful of the restriction placed upon the licensing inscription specifically mandated by subdivision 3 of section 6512 of the Education Law, which obviously serves the purpose of permitting the public to correctly ascertain whether a particular physician was educated (and *earned* his degree) in osteopathic medicine or

allopathic medicine; and based on the course of study pursued and degree conferred or the training received, licenses issued in New York mandated the inscription of D.O. only since section 6509 of the Education Law in part provides that: " On receiving from the board an official report that an applicant has successfully passed the examinations and is recommended for license, *the department shall issue to him a license to practice according to the qualifications* of the applicant." (Emphasis added.) The " qualifications of the applicant " were predicated on the course of study and training in the field of osteopathy and, as stipulated, each of the intervenors " received his preliminary and professional education and training only in osteopathic medicine ".

Appellants urge that by leaving the D.O. inscriptions on the licenses of osteopaths who had received a retroactive degree of M.D. from the successor college to COP&S, they fulfilled compliance with subdivision 3 of section 6512 of the Education Law, but it is evident that their action in inserting the additional M.D. inscription would only serve to mislead and confuse, if not deceive, the public into believing that this physician had pursued in-course academic programs of study in both osteopathic and allopathic medicine. The express purpose of the quoted sections would be destroyed by the inescapable confusion created in the use of both inscriptions, upon the facts here presented. It is obvious that when the intervenors had successfully passed their licensing examinations, the Department of Education issued licenses based upon their preparation, study and training in osteopathy pursuant to section 6509 of the Education Law, and we find nothing in the record which would authorize the department to add an indicator to licenses of the intervenors to the effect they had been found qualified as M.D.s, despite the retroactive conferring of such a degree from the successor college to COP&S where they had originally *earned* a D.O. degree in the only science for which they had been prepared and trained in.

It is conceded that when intervenors' degrees were changed from " D.O." to " M.D." by the merger agreement in California, there was no showing or evidence produced (and indeed no requirement) that they had pursued any further program of academic study in any area of the healing arts; nor, in fact, were they required to take examinations in *any* of the fields of medicine; and, to compound the problem when they submitted their M.D. degrees to appellants no new, additional or different qualifications or training were considered, save these newly-acquired degrees.

If we were to assume the correctness of the philosophy advanced in the minority opinion that the intervenors are

entitled to the additional inscription because their academic training is similar to those who took in-course studies in allopathic medicine, then the discriminatory action of appellants is all the more glaringly apparent. While the minority stresses this approach, it is paten*.y and unmistakably clear that only those osteopaths who received an M.D. degree retroactively from CCM, or are California licensed, may have the additional inscription of "M.D.", while the many other (and by far the vast majority of) licensed osteopaths in New York who graduated with similar training from other accredited schools are not afforded this privilege.

In sum, if there were no distinction between the respective qualifications and if there were no need for informing the public of the differences, then the requirements and mandates contained in section 6509 and subdivision 3 of section 6512 of the Education Law would be completely meaningless.

We are at odds with that statement contained in the minority opinion that "the degree *today* earned by a graduate from an osteopathic school apparently is the equivalent of that earned by an ' M.D.' and merely indicates a specialty or additional training ", for the stipulated facts clearly state that any M.D. degree mentioned therein refers only to that granted by CCM, *and* further that there is no claim that it " is identical or equivalent with any M.D. degree granted by any other professional school ".

In sustaining petitioner's contentions we note that our conclusion has been shared by the determination in *Mitchem* v. *Perry* (390 S. W. 2d 600 [Mo.]), which, coincidentally, deals with the same colleges and degrees appearing in the instant case. We note, further, that appellants in no way challenge respondent's contention that the medical licensing authorities in the States of Alabama, Colorado, Indiana, Mississippi, Missouri, New Jersey, Oklahoma, Oregon, Rhode Island and Texas have denied recognition to, and have declined to inscribe, the California College of Medicine " M.D." degree here in question.

Of more than passing interest, those physicians similarly situated as the intervenors, but practicing in California, were, upon the changeover, compelled to make a choice whether to continue with the use of D.O. or change to M.D., to the exclusion of D.O. The statutory scheme of licensing in New York cannot be interpreted to grant greater rights and privileges and, since they cannot be licensed as M.D., they must be relegated to the use of the D.O. inscription.

It appears that the petitioner had sought correction of the inscriptions for some time, most of which was consumed with negotiations and conferences with appellants, and thus no claim

of laches can be upheld since the complained-of violations also constitute a continuing failure to obey the statutes (*Matter of Cash* v. *Bates,* 301 N. Y. 258; *Southern Leasing Co.* v. *Ludwig,* 217 N. Y. 100, 104; *Matter of Meyer* v. *Commissioner of Public Safety,* 39 Misc 2d 608).

We are unable to agree with appellants that there should be a dismissal of the proceeding because of the nonjoinder of necessary parties, to wit, all New York State holders of '' D.O., M.D.'' licenses. The instant proceeding being in the nature of mandamus, it was not necessary to proceed against anyone except that body or those bodies whose determination is sought to be reviewed. In any event, the question having been raised for the first time on appeal it cannot now be considered (*Jones* v. *Gould,* 200 N. Y. 18; 10 Carmody-Wait 2d, New York Practice, § 70:300, pp. 563–564).

We must also reject the contention that the intervenors were entitled to the additional inscription under the full faith and credit clause of the Constitution for if we were to assume that an M.D. degree, even if obtained in the ordinary and usual manner, constitutes a license to practice medicine, it would still not be entitled to automatic recognition by virtue of this clause. (*State* v. *Rosenkrans,* 30 R. I. 374, affd. 225 U. S. 698.) Finally, appellants erroneously urge that they are being deprived of a property right in violation of the due process clause of the Constitution and will sustain economic loss. Distinctions made by the Education Law among differing medical practitioners have been held to be proper (*Wasmuth* v. *Allen,* 14 N Y 2d 391, app. dsmd. 379 U. S. 11) and should be here followed.

The action of the appellants obviated the clear intent of the quoted sections of the Education Law and constituted an arbitrary and discriminatory act which impels us to uphold the determination appealed from.

The judgment should be affirmed, with costs.

HERLIHY, J. (dissenting). As the proceedings come to this court it has been held that the acts of the Board of Regents exceeded its statutory authority and that it has acted contrary to the declared public policy of the State. The premise for these conclusions is based upon a violation of sections of the Education Law and decisional law as enunciated in *Matter of Kurk* v. *Medical Soc. of County of Queens* (24 A D 2d 897, affd. 18 N Y 2d 928).

The majority of this court is holding that '' The action of the appellants obviated the clear intent of the quoted sections of the Education Law and constituted an arbitrary and discriminatory act which impels us to uphold the determination appealed from.''

In arriving at this conclusion, the majority apparently has determined that, as a matter of law, the Board of Regents does not have the power to inscribe " M.D." on the license of an applicant who has been granted a license to practice as a doctor of osteopathy (" D.O.").

It should be first and emphatically stated that the doctor of medicine diploma was granted to the intervenors-respondents and to the physicians similarly situated under the authority conferred by the State of California to a duly recognized educational institution of that State.

In this proceeding the Board of Regents in its amended answer and as part of its first affirmative defense alleges: " That the Commissioner of Education, pursuant to his discretionary power to grant the M.D. license to qualified physicians licensed as such in another state and already qualified to practice medicine without limitation in New York State, duly granted the Intervenors' applications to have the letters M.D. endorsed upon their licenses after the letters D.O."

Counsel for the Board of Regents in his affidavit (par. 6) stated: " It should further be noted that at all times osteopathic physicians are and have been required to take the same licensing examination as other physicians and that upon completion of such examination osteopathic physicians receive an unlimited license to practice medicine (Education Law § 6512, subdivision 3)."

Paragraph 38 of the stipulation of facts before this court provides: " Each osteopathic medical school recognized by the Board of Regents of the State of New York and by the Department of Education provides medical education which is at least equal, both in substances and in quality, to that provided by the non-osteopathic medical schools recognized by the Board of Regents and by the Department of Education."

The issue seems to simplify itself to the following: The statutory law of this State requires that a graduate osteopath have inscribed on his license to practice the letters " D.O.". Does such fact bar the Board of Regents from allowing the additional inscription " M.D." when the osteopath in making his application meets all the requirements for using such inscription?

Section 6509 of the Education Law, as applicable to this case, provides in part as follows: " On receiving from the board an official report that an applicant has successfully passed the examinations and is recommended for license, the department shall issue to him a license to practice according to the qualifications of the applicant. Every license shall be issued by the

department and shall state that the licensee has given satisfactory evidence of fitness as to age, character, preliminary and medical education and all other matters required by law, and that after full examination he has been found properly qualified to practice."[*]

Subdivision 3 of section 6512 of the Education Law provides as follows: " Graduates of colleges of osteopathy registered by the New York state education department who pass the medical licensing examination of the state of New York shall be issued a license to practice medicine and surgery. A license so issued shall contain thereon, following the name of the licensee, the letters ' D.O.' Licenses heretofore issued to osteopathic physicians with limitations under prior statutes shall remain in force with such limitations continuing."

The Education Law at no point requires or even suggests that the Regents " must or shall " inscribe the letters " M.D." upon any license. Curiously, it does not appear that the Regents are required to inscribe upon any license any particular descriptive letters except in the case of osteopaths and possibly in the case of nurses. (See Education Law, § 6907, subd. 1.) Apparently by custom or appropriate rules, the Regents have placed the inscription of " M.D." on licenses issued to generally qualified medical practitioners. It would appear that in the past the type of designation at issue in this case has been determined by both the examination requirement and the particular scholastic diploma held by the licensee.

It has been the long-established policy of the Regents to add such an inscription according to the qualifications and scholastic degree of a licensee. The statutory requirement that the inscription "D.O." be noted on a license neither prohibits nor permits the additional inscription of " M.D.". The purpose of the various provisions as to licenses is, as found by the majority, to inform the public of the difference in the training of the licensees. (See *Matter of Kurk, supra.*) Where a licensee is *duly qualified*

---

[*] The section further provides: " An applicant who meets the requirements of this article as to preliminary and professional education, who presents evidence of successful practice, or professional experience satisfactory to the commissioner of education and who presents evidence satisfactory to the commissioner that he has been duly licensed by proper authority in any other state, territory, district or possession of the United States after passing examinations which were equivalent as to subject matter and standards to those of the state of New York at that time, may without further examination on payment of forty dollars to the department and on submitting such further evidence as the commissioner may require, receive from the commissioner in his discretion and endorsement of his license or diploma conferring all rights and privileges of a license issued by the department after examination."

to use a particular descriptive title, be the same initials or otherwise, the addition of such a title following the name of the licensee is obviously in accord with such a public policy and specifically in accord with the duty of the Regents pursuant to section 6509 of the Education Law. Under such circumstances, this court should not interpret the power of the Regents as more restricted than the construction given by that body itself to its power. (See *Lightbody* v. *Russell*, 293 N. Y. 492, 495, 496; *Curtis* v. *Eide*, 19 A D 2d 507, 508; *Matter of Insurance Co. of North America* v. *Senior*, 27 A D 2d 24, 29, 30, revd. 21 N Y 2d 761 on dissenting opn. at the Appellate Division.)

It should be noted that in examining the power of the Regents to add the inscription of " M.D." to the license of a doctor of osteopathy, it would appear that if the Regents refused such an inscription to an applicant who is duly qualified by examination and scholastic degree, such a refusal would be discriminatory to the applicant in terms of prestige.

It appears that in accord with the directive of the Legislature in section 6509 of the Education Law that the Regents has the power to inscribe "M.D." upon appropriate licenses — conceded by the petitioner — and the requirement that " D.O." appear thereon neither adds nor detracts from such power.

As to decisional law, the majority, as noted above, rely upon the *Kurk* case (*supra*), but I am unable to say that the rationale of that decision either affects or is decisive of the present proceeding. There was no issue in that case with reference to the authority of the Board of Regents to inscribe " M.D." on petitioner's license. The issue was the right of the petitioner to become a member of the Medical Society of Queens County, which Society contended that pursuant to section 173 of the Membership Corporations Law it had the right to establish requirements for membership and that its educational requirement did not violate any provision of the Education Law and did not so proscribe petitioner's practice of medicine and surgery as to constitute a denial of equal protection of the law.

It should be further noted that the Board of Regents of the State of New York is not bound by or obligated to follow what happens in some other jurisdiction.

THE BOARD OF REGENTS WAS NOT PROHIBITED BY LAW FROM GRANTING THE REQUEST OF THE INTERVENORS.

The Board of Regents properly exercised its discretion and the power of the court to review is limited. (See *Matter of Marburg* v. *Cole*, 286 N. Y. 202, 208, 212; *National Psychological Assn. for Psychoanalysis* v. *University of State of N. Y.*, 8 N Y 2d 197, 205, app. dsmd. 365 U. S. 298; *Wasmuth* v. *Allen*, 14 N Y 2d 391;

*Paterson* v. *University of State of N. Y.,* 14 N Y 2d 432; *Matter of Erlanger* v. *Regents of Univ. of State of N. Y.,* 256 App. Div. 444, 451; *Matter of Gormeley* v. *New York Daily News,* 30 A D 2d 16, 22.)

In *Paterson* (*supra,* p. 439), the court said: "It is not unlike the problem presented in *National Psychological Assn.* v. *University of State of N. Y.* (8 N Y 2d 197, 204, app. dsmd. 365 U. S. 298) where we held it was not unlawful delegation of legislative power to permit the board to determine the 'substantial equivalent' of a doctoral degree, as well as to determine what constituted 'satisfactory supervised experience' (see, also, *Matter of Marburg* v. *Cole,* 286 N. Y. 202)."

The burden of proving that the action of the board is arbitrary, capricious or unreasonable, or a violation of law, rests upon the petitioner.

It is not a question of how the court might determine the issue but, rather, did the administrative agency properly exercise its discretion?

Insofar as the petitioner in this case might have been said to raise questions as to the qualifications of the intervenors as doctors of medicine, it appears without dispute: that the intervenors took the same examinations as an " M.D."; that the intervenors are licensed to generally practice all phases of allopathic medicine as well as osteopathic medicine; that the education of the intervenors was identical with that required for an " M.D." and, additionally, included instruction in the osteopathic arts; that the intervenors are the holders of doctor of medicine (" M.D.") degrees.

Upon the present record it is established that the intervenors are well qualified to have the title " M.D." and *the Regents were not arbitrary or discriminatory in adding such an inscription to the licenses of the intervenors.*

It should be noted that in considering the power of the Regents to designate an osteopath as an " M.D.", the degree *today* earned by a graduate from an osteopathic school apparently is the equivalent of that earned by an " M.D." and merely indicates a specialty or additional training. Under such circumstances it may well be that the receiving of the particular degree " doctor of medicine " is not an essential prerequisite to inscribing the license of a qualified " D.O." with the additional " M.D." indication.

Reference is made to discrimination, but the record does not spell out any factual situation which is or might be discriminatory to osteopaths, unless we infer it from the prestige of " M.D.". As a matter of law, the inscription is not necessary on the inter-

venors' licenses, but the Board of Regents has put it on the same and established a custom which it may or may not follow. If a general medical practitioner can have as a matter of right '' M.D.'', then a duly qualified '' D.O.'' cannot now be denied that right and any statute so discriminatory might well be unconstitutional.

As noted hereinabove, the petitioner's contention as to misleading the public is a *non sequitur* in that the additional inscription in fact gives notice to the public of the licensees' actual qualifications.

It cannot be found on this record that the Board of Regents in any respect violated the Education, or any other, Law, but to the contrary, on a finding supported by the record that the intervenors were qualified by education and experience, properly exercised its discretion in granting the inscription.

If the majority intends to question the contents of the dissent, it should be here stated that my reasons for reversal are based solely upon the present record and legal arguments of the respective parties. However, in view of the majority's reference to the dissent, I would now go outside the record and observe that the American Medical Association in convention at Bal Harbour, Florida, has recommended to county and State medical societies to accept osteopaths as active members and further suggested that accredited hospitals accept osteopaths on their medical staffs (see *Wall Street Journal,* Dec. 4, 1968). The American Medical Association further asserted that osteopathic schools have been teaching much the same medicine as taught by AMA recognized medical schools, all of which emphasizes that the expertise of the Board of Regents should not, ordinarily, be subjected to court interference.

The judgment should be reversed, and the petition dismissed.

GIBSON, P. J., REYNOLDS and STALEY, JR., JJ., concur with GABRIELLI, J.; HERLIHY, J., dissents, and votes to reverse and dismiss the petition, in an opinion.

Judgment affirmed, with costs.