OPINION OF THE COURT
Millard L. Midonick, J.
This proceeding was brought by the escrow agent for the property deposited to secure the decedent’s performance under a separation agreement with his former wife. The escrowed property originally consisted of the shares of stock and the lease representing the decedent’s ownership interest in his co-operative apartment (together with the relevant stock power and assignment executed in blank). Pursuant to an earlier decision of this court, the agent was authorized to sell the apartment and now holds the proceeds of such sale. He seeks a direction from the court permitting him to transfer these proceeds, on account of *635 past due alimony payments, to the former wife. The decedent’s widow opposes the proposed distribution and contests the former wife’s right to the escrowed property. The estate apparently has no significant assets other than any interest it may have in the apartment proceeds.
The decedent and his former wife, Bernice, were married on January 18, 1941. Thereafter, they separated, and entered into a separation agreement dated January 1, 1970. This agreement provided that the decedent was to pay to Bernice a gross annual figure of $36,000, or $3,000 per month, or such sums as required to provide her an annual income of $20,000 net of taxes, disregarding all her other income for purposes of this computation. The agreement provided that upon the death of either party, or the wife’s remarriage, “the Husband’s obligations hereunder shall cease and shall not constitute a charge on his estate except as to arrears and except as to moneys owing under subdivisions (b) and (d)” (which provided the mechanics of adjustment to achieve the annual $20,000 net of taxes standard). In addition, the agreement required the decedent to make a will bequeathing to Bernice the greater of $100,000 or one third of his net estate, if she survives him and has not remarried. The terms of the separation agreement were incorporated, but not merged, in a valid divorce decree dated February 28, 1980.
The agreement further provides that “In order to secure to the Wife the due performance by the Husband of all his obligations hereunder,” the decedent must deposit the documents referred to above, representing his ownership of the co-operative apartment, with an escrowee. Under the terms of the agreement, the former wife has the right to proceed against the security if the decedent does not perform any of the obligations set forth in the separation agreement. She is required to serve notice in writing by registered mail upon the escrowee and her former husband if she intends to so proceed. Once notice is served, the decedent has 30 days to remedy the default, or, if he does not the escrowee is authorized to sell the security and deliver the proceeds, up to the amount of the default, to the wife. The wife is not required to resort to the security in the *636 event of any default, and may pursue other remedies if she desires.
In conformance with the provisions of the separation agreement,.the decedent made the required bequest in his will, and, in 1970, paid alimony of $36,000 to Bernice. Bernice asserts that in 1971, the decedent paid only $12,500 in alimony, that he paid even smaller sums in succeeding years, and that by 1978, he had ceased payments altogether. Nevertheless, Bernice did not contemporaneously attempt to proceed against the security, or otherwise protest the nonpayment of alimony. The decedent continued to live in the apartment whose ownership was in escrow. The decedent also remarried, and remained married to his second wife, Patricia, until his death.
By letter dated January 2, 1980, Bernice gave notice, in the required form, of her intention to proceed against the security under the agreement. The decedent died on January 17, 1980, before the 30 days allotted to him under the agreement to remedy the default had expired.
The widow argues that any amount of alimony found to be due should be offset by $68,750, the value of several paintings the decedent gave his former wife in 1966. There is no showing that any such offset was contemplated by the parties, especially as the gift occurred four years before the separation agreement was executed. Also, in 1970, the first year the separation agreement was in force, the decedent paid the entire alimony due under the agreement. The argument that the transfer of the paintings was intended to be in lieu of payment of a portion of the alimony claim cannot be maintained in light of the date of the transfer and the fact that this transfer was not reflected in the 1970 payments.
The widow opposes the distribution of the proceeds of the apartment to the former wife on several grounds. She alleges that the escrow agreement terminated at the decedent’s death because he was not afforded the full 30 days specified in the separation agreement to respond to Bernice’s claim. She also argues that Bernice’s failure to proceed against the security at any time during the nine years the decedent was in default constitutes a waiver of *637 her right to enforce her claim for alimony. The court finds against the widow on both grounds, there being no laches nor Statute of Limitations obstacles under the judgment of divorce, nor any intentional waiver.
The widow’s first argument, that the separation agreement terminated at the decedent’s death, is based on two erroneous presumptions. The widow argues that the death of the decedent, per se, terminated the agreement. This is clearly contrary to established law. “ Tt is a well-settled rule with respect to an escrow, that if either of the parties die [sic] before the condition is performed * * * the deed is good, and will take effect from the first delivery’ ”. (Perry v Perry, 170 App Div 525, 530, quoting Ruggles v Lawson, 13 Johns 285, 286; accord Webster v Kings County Trust Co., 145 NY 275.) The widow also urges that because the decedent died before the expiration of the 30-day period provided in the agreement to permit him to cure or contest the default, he was unable to perform a required condition of the escrow agreement, which consequently must automatically terminate. A careful reading of the separation agreement reveals that the only condition placed on the decedent was the payment of alimony, and the only condition binding the former wife was the requirement she give written notice of her intent to proceed against the security. The 30-day period is clearly a grace period granted the decedent “with which to remedy the default.” The fact that the decedent died before the 30-day period expired is irrelevant. The escrow agreement did not impose any condition that only the decedent could perform. His estate could have acted in his place to remedy or contest the default with no prejudice to the decedent’s interests.
The widow has also failed to prove that the former wife waived her rights. A waiver is an intentional relinquishment of a right which is known or ought to be known. (Byer v City of New York, 50 AD2d 771; Matter of Stillman, 82 Misc 2d 736, 738.) “[A] waiver does not occur through mere oversight or negligence”. (Matter of Rosenbaum, NYLJ, Oct. 29, 1980, p 10, col 6.) There is no evidence that the former wife intentionally relinquished her rights to proceed against the security herein; there is only evidence that she pursued no affirmative course of action until *638 January 2, 1980. Before that date, the decedent was residing in the apartment which forms the basis of the escrow agreement. The former wife may have considered this fact, beneficial to the widow, in determining whether or not to proceed.
Nor can the former wife’s delay be deemed laches in this case. Laches depends not only on the passage of time, but on the fact that this delay prejudices the other party. (Marcus v Village of Mamaroneck, 283 NY 325, 332; see, also, Prouty v Drake, 18 Misc 2d 887, 890.) The decedent was in no way prejudiced or harmed by the delay in this case. It may even be said that he was benefited in that the escrow agent was not obliged to sell the apartment in which the decedent (and his widow) lived until his death.
The widow also argues that her right of election under EPTL 5-1.1 takes priority over the former wife’s claim for alimony. This argument need not be reached here. A finding that the escrow agreement is valid necessarily operates to keep the escrowed assets outside the decedent’s estate. Yet even if this court had found otherwise, the former wife would still have a claim which should be superior to a right of election claim. (Cf. Rubenstein v Mueller, 19 NY2d 228.)
EPTL 5-1.1 provides that the widow’s election is against the “net estate” of the decedent. The net estate consists of the decedent’s gross estate, minus, inter alia, debts. A claim for unpaid installments of alimony is a preferred claim against an estate. (Matter of Torr, 29 Misc 2d 772 [former wife recovered 20 years’ worth of alimony arrears]; Matter of Herbert, 23 Misc 2d 884.) Moreover, the accrued alimony is treated as a judgment debt (Matter of Herbert, supra, p 888) and as such a claim therefor is governed by a 20-year Statute of Limitations. (CPLR 211; Matter of Bassford, 91 NYS2d 105, mod 277 App Div 1128, mot to resettle den 278 App Div 654.) It is evident that whether or not the escrowed assets are considered a part of the decedent’s estate, the former wife’s claim for alimony arrears must be satisfied.
The question whether the principles of Matter of Dun-ham (63 Misc 2d 1029, affd 36 AD2d 467, mot for lv to app den 29 NY2d 485 [which holds a widow’s right of election *639 superior to the right of a former wife to a bequest made by the decedent pursuant to a separation agreement]), would control when a testator secures such bequest by placing assets in escrow, is not directly before the court. The alimony arrears exceed the proceeds of the sale of the escrowed property, so that the bequest to the former wife in the decedent’s will necessarily fails due to lack of funds in the estate.