THE STATE OF MISSOURI ex rel. EDWARD C. CROW, Attorney-General, Relator, v. THE NATIONAL SCHOOL OF OSTEOPATHY, Respondent.

Kansas City Court of Appeals, November 7, 1898.

1. Osteopathy: DIPLOMA: ATTENDANCE AT SCHOOL. Under the laws of this state a school of osteopathy has no power to issue a diploma except where the diplomat has been in personal attendance, as a student in such school, for at least four terms of not less than five months each before graduation; and the fact that the diplomat is learned in the science of medicine and surgery, and proficient in the study and methods of osteopathy, will not warrant the issue of such a diploma.

2. Corporations: OFFICERS OF: FORFEITURE OF FRANCHISE. Corporations are political trustees, and their charters will not be forfeited for either acts of commission or omission done in good faith, but it must be shown that such acts are willful abuses of their corporate duties and rights.

*Original Proceeeding by Quo Warranto.*

WRIT DENIED.

EDWARD C. CROW and LYMAN & BROWN for relator.

By whom and how shall a person be authorized to treat diseases of the human body according to the system commonly known as osteopathy, and as practiced by the American School of Osteopathy of Kirksville, Missouri? Sections 1, 2 and 3, page 206, Acts of 1897,

Missouri. Defendant shall be proceeded against by information in the nature of *quo warranto* instituted against defendant or its officers. R. S. 1889, sec. 2835.

WITTEN & HUGHES for respondent.

(1) There is nothing either in the statute or in the articles of association of the National School of Osteopathy providing how or when diplomas may be granted. This matter is left, as with all similar institutions, solely in the discretion of the school and its officers. Session Acts 1897, page 206, secs. 1, 2 and 3; Articles of Ass'n, Nat. School of Osteopathy; State ex rel. v. Gregory, 83 Mo. 123. (2) The question is one of good faith. If the school did what it believed to be right and proper, and in accordance with its legal authority after taking legal advice, then there is no ground for revocation, even though this court should hold a different view as to its duty in the premises. Canal Co. v. Railway, 4 Gil. and Johns, R. 1; 4 Am. and Eng. Ency. of Law, p. 304, note 2; 1 Beach on Priv. Corp., secs. 21, 22 and 58; People v. Sugar Refining Co., 121 N. Y. 582; State v. Turnpike Co., 2 Sneed, 254, and note; Wooden Co. v. Newton, 21 Cent. Law Journal, 432–434 and note.

GILL, J.—This is a proceeding in the nature of *quo warranto*, the object of which is to take away the corporate franchise of the respondent, because of an alleged abuse thereof. Defendant was organized as a corporation, under the laws of Missouri, in July, 1897, to conduct a school at Kansas City for the education of those desiring to treat diseases of the human body according to the system, method or science known as osteopathy.

STATEMENT.

The alleged abuse of defendant's corporate franchise is, according to the attorney-general's information, that on August 11, 1897, said defendant, by its officers, issued to one William Smith, under the assumed name of George H. B. Stewart, a false and fraudulent diploma, wherein it was pretended that said Smith, alias Stewart, had completed the osteopathic course of study, according to the curriculum of said school, whereas the fact was that said Smith, alias Stewart, never attended said school at all and never prosecuted any studies of osteopathy in said institution—this contrary to an alleged requirement of the laws of Missouri, which prescribe that diplomas can only be issued to those who attend such schools at least four terms of not less than five months each.

In arriving at the facts of this case, we are forced to rely on the deposition of one William Smith taken by the attorney-general, and as opposed thereto the deposition of E. D. and A. L. Barber taken by the respondent. While these witnesses have not in all things agreed, the following facts are not controverted: The transactions giving rise to this litigation occurred at Kansas City during the first part of August, 1897. At that time there existed, it seems, the two schools of osteopathy—one called the American School of Osteopathy at Kirksville, Missouri, and the other, this respondent, the National School of Osteopathy located at Kansas City. The Kirksville school is one of several years' standing, and may be called the mother institution of osteopathy, while the Kansas City school was then only lately organized. The parties brought to our consideration by the proof are William Smith, a man of extensive learning in the medical profession, a graduate of two of the foremost medical colleges of Europe, as also a graduate of, and professor in, the osteopathic school at Kirksville. The other parties

are E. D. Barber, Helen M. Barber and one Cormack, who were called professors in the Kansas City school. In the fore part of August, 1897, said Smith concealing his identity and pretending to be a Dr. G. H. B. Stewart of Springfield, Missouri, appeared at the offices of the Kansas City school and opened negotiations with E. D. Barber for a diploma of the school. He seems to have made a full disclosure of his varied accomplishments, informed Barber of his attendance and graduation in the various colleges and readily convinced Barber (which was the fact) that he was most thorough in everything pertaining to osteopathy. Smith made the second visit within ten days to Barber's office and at the last, on payment of $150 as a graduation fee, secured a diploma of that school, which certified that he (Smith, under the name of Stewart) had "completed the full course of study prescribed by the National School of Osteopathy."

Smith testified that Barber had him promise that the manner of obtaining the diploma—that it was issued without a school attendance—should be kept a secret, while Barber swore that there was no secrecy and that the diploma was issued in the usual open and public manner and after a thorough examination wherein he found Smith so very proficient in all branches taught in the school.

I. The first matter we are called on to decide is, whether or not the defendant was guilty of an illegal act in issuing the diploma in question without a previous school attendance by the applicant Smith. It seems to have been a matter of some controversy whether or not one practicing osteopathy should qualify as a practitioner of medicine and surgery under the state law as prescribed by article 1, chapter 110, Revised Statutes 1889. This however was put at rest by an act of the

OSTEOPATHY: diploma: attendance at school.

legislature approved March 4, 1897 (Laws 1897, p. 206). The first section thereof in effect declares that the treating of diseases by the system or science known as osteopathy should not be considered the practice of medicine and surgery within the meaning of article 1 of chapter 110, and expressly exempts the osteopathist from the provisions of the act. The next section reads as follows:

"SEC. 2. Any person having a diploma regularly issued by the American School of Osteopathy, of Kirksville, Missouri, or any other legally chartered and regularly conducted school of osteopathy, who shall have been in personal attendance as a student in such school for at least four terms of not less than five months each before graduation, shall be authorized to treat diseases of the human body according to such system, after having filed such diploma for record with the clerk of the county court of the county in which such person proposes to practice; and having filed with such clerk an affidavit that the diploma is genuine, and that he or she is the person to whom the same was issued and that all the provisions of this act were fully complied with before the issuing of such diploma whereupon the clerk shall record such diploma in a book to be provided by him for that purpose, and shall indorse upon such diploma the date of filing and recording same, for which he shall receive from such person a fee of $1."

The only remaining section of the act provides for a penalty for its violation.

A careful reading of this statute forces the conclusion, that by it the legislature meant to impose, as a condition precedent to the issue of a diploma, that the graduate must have attended the school as a student four terms of not less than five months each. The diploma, supported by the affidavit of the graduate,

serves, when filed with the county clerk, as the party's license to practice the system or method of healing known as osteopathy. These schools and their graduates have been relieved of the stringent regulations imposed on those of the ordinary medical and surgical practitioners. But in order to protect the public from frauds and quacks it was in effect here provided that the diploma of one of these schools of osteopathy should not be issued except to a person who had devoted not less than twenty months to the study of said science, and that a diploma has been furnished the party bears evidence of that fact. The diploma is made a voucher to the holder's proficiency. We think we give effect to the legislative intent by holding that a school of osteopathy, chartered under the laws of this state, shall not issue a diploma except in a case where the diplomat has, in the language of the act, "been in personal attendance as a student in such school for at least four terms of not less than five months each before graduation."

The defendant then, in our opinion, was guilty of a violation of the law when it issued to Smith, alias Stewart, the diploma in question. But it does not follow, because defendant has committed a legal wrong, that this court should decree a forfeiture of its corporate franchise. It is not every violation of a corporate charter that justifies a judgment of dissolution. As said by Justice Cowan, in People v. Bristol, 23 Wend. 236: "To work a forfeiture there should be something wrong; and not only wrong, but one arising from willful abuse or improper neglect. * * * The prosecution before us goes on corporate default or corporate wrong, which must, I think, be more than accidental negligence, or a mere mistaken excess of power, or a mistake in the mode of exercising an acknowledged power. There

CORPORATIONS: officers of: forfeiture of franchise.

must be an abuse of trust somewhat of such a nature as would render a trustee liable to forfeit his station on the complaint of his *cestui que trust*. Corporations are political trustees. Have they fulfilled the purposes of their trust, or acted in good faith with a view to their fulfillment, is the question to be asked when they are called on to forfeit their charters, either for acts of commission or omission." See, also, 1 Beach Priv. Corp., sec. 58; People v. Railroad, 121 N. Y. 582; State ex rel. v. Societe, etc., 9 Mo. App. 114. In the last cited case Judge BAKEWELL says: "In order that a forfeiture of the grant be adjudged, there should be a manifest violation of the charter clearly shown. This is the general rule; and the courts proceed with great caution, and are slow to declare a forfeiture. Mere mistakes and errors, and acts of misuser and nonuser that do not amount to willful and repeated violations of the contract between the corporation and the state, are not held to be sufficient to warrant judgment of ouster." The authorities too are uniform that the onus to establish the acts warranting a forfeiture rests on the relator—in this case the attorney-general.

A willful violation of the law has not in this case been shown by a preponderance of the evidence. As already stated the relator rests his case solely on the testimony of Smith, alias Stewart; but this is materially controverted by that of Dr. Barber, president of the Kansas City school. This witness stands before us unimpeached and unattacked by any other evidence save only the sworn statements of Smith (or Stewart), the self-appointed detective who admits he entered into the scheme to entrap the defendant's officers. These parties are all strangers to this court and we know nothing of their credibility or standing outside what appears of record, nor do we mean to reflect on any of them; we have only to say that the burden of the proof

which rests on the relator to prove, not only that a wrong was committed but that such wrong was willfully done, has not been met by the attorney-general. Under the view we take of the statute before quoted, the defendant, by issuing a diploma to Smith, alias Stewart, did an unlawful act, but that defendant's officers did this under a mistaken view of their duties is made plain by the testimony in their behalf. If this evidence is to be credited—and there is nothing to impeach it other than as before stated—then Dr. Barker had taken advice from two reputable attorneys at Kansas City as to whether or not defendant could legally issue diplomas to physicians already learned in the science of surgery and medicine, when they should in addition show themselves proficient in the study of osteopathy; and the evidence shows that said president of the defendant corporation was informed that he had the right to do so, and that it was not required that these candidates for graduation should attend the school for the twenty months named in the statute. The evidence on defendant's part was to the effect that its officers in good faith pursued that course in the matter of Smith's application.   He was examined and found, not only to be a physician learned in all the branches of medicine and surgery, a graduate of two of the most noted colleges, but besides was found thoroughly educated and equipped in that peculiar system or science called osteopathy.   If this testimony is to be given any weight at all, then the act of graduating Smith, alias Stewart, was done in entire good faith; and if so then we think the harsh remedy of forfeiture ought not to be visited on the defendant. At all events the case made by the testimony is not of that clear and convincing character as to justify the revocation of defendant's corporate franchise.

The judgment then will be for the defendant.   All concur.