Kenneth Eugene MITCHEM, Plaintiff,

Aulley Woodrow Wilson, Plaintiff-Appellant,

v.

Wm. D. PERRY, M.D., D. Elliott O'Reilly, M.D., R. A. Michael, D.O., H. Graham Parker, M.D., Raymond A. Ritter, M.D., Harry S. Still, D.O., and R. C. Conrad, M.D., All members of and constituting the State Board of Registration for the Healing Arts for the State of Missouri, and John A. Hailey, Executive Secretary for the State Board of Registration for the Healing Arts, Defendants-Respondents.

No. 24163.

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Motion for Rehearing and for Transfer to Supreme Court Denied June 7, 1965.

Application for Transfer Denied
July 12, 1965.

Edward L. Filippine, Clayton, for appellant.

Norman H. Anderson, Jefferson City, Albert J. Stephan, Jr., St. Louis, John W. Noble (Bradley & Noble) Kennett, John O. Bond, P. Pierre Dominique, Jefferson City, for respondents.

SPERRY, Commissioner.

Plaintiff is a legally qualified and practicing physician and surgeon under the laws of Missouri, being licensed as a D.O. Defendants are members of and constitute the Board of Registration for the Healing Arts in Missouri, hereafter referred to as the Board. The Board has the power and duty to issue licenses to qualified applicants, authorizing them to practice their profession as Medical Doctors, or as Doctors of Osteopathy. Plaintiff filed application with the Board, asking that "Medical Doctor" be made to appear on his license.

The Board, consisting of both M.D.'s and D.O.'s, unanimously denied the application and plaintiff instituted proceedings in the Circuit Court of Cole County for a judicial review of the decision. The court issued its writ of certiorari and reviewed the decision under the provisions of Sec. 536.100 RSMo 1959, V.A.M.S. From a judgment affirming the decision of the Board plaintiff appeals.

Plaintiff, by his counsel, and the Board, by the Attorney General of Missouri, have filed briefs. Briefs have also been filed by Counsel for Intervenors herein, Missouri State Medical Association and Missouri Association of Osteopathic Physicians and Surgeons. Intervenors support the decision of the Board.

■ The facts upon which the court reviewed the decision were stipulated. From those facts we are to determine whether or not the Board had before it substantial evidence upon which it could have reasonably reached the decision that it reached; whether or not the decision is supported by the facts on the whole record; and whether or not the result reached is against the overwhelming weight of the evidence. Sec. 536.140 RSMo 1959, V.A.M.S.

After having attended duly accredited, reputable Colleges of Osteopathy, for a total of four terms of thirty-two weeks each, and after having received thereby the degree of Doctor of Osteopathy, and after having applied for licensing and having successfully completed a written examination, plaintiff was legally licensed in Missouri as a Physician and Surgeon, on June 18, 1957. Since that time he has received a certificate of registration for each ensuing year.

On March 30, 1961, the California Medical Association and the California Osteopathic Association signed a contract of unification. One of the provisions thereof was to the effect that the California College of Osteopathic Physicians and Surgeons should become the California College of Medicine, with power to issue the degree of M.D. under criteria established and administered by the Advisory Educational Committee consisting of the Dean of the University of California at Los Angeles School of Medicine; Dean of the University of Southern California School of Medicine; Dean of the Loma Linda School of Medicine; and the Dean of the *California College of Medicine*. This Committee was to be assisted, in an advisory capacity, by other Medical Doctors and prominent Californians, and by the Attorney for the California Osteopathic Association. The criteria included the requirement that applicants for the degree of Doctor of Medicine must file an application with the *California College of Medicine* setting forth: photostatic copy of his *California* license as a physician and surgeon; transcript of *credits at all other institutions;* and certain other matters of minor importance. If the applicant met the above requirements and had met educational requirements for the degree of Doctor of Medicine, such a degree was to be issued. The California College of Medicine was approved, accredited and chartered on February 15th, 1962, and has been so since that time, including the time when the judgment in this case was rendered, July 16th, 1964.

On February 23rd, 1962, plaintiff filed his application for registration in the California College of Medicine for the purpose of obtaining a degree of Doctor of Medicine. He was so accepted and registered. He was, at

that time, and had been since July 18th, 1957, a legally licensed physician and surgeon in California, as a D.O. However, plaintiff never attended or studied in the California College of Medicine nor in any other Medical College, nor has he taken a correspondence course from any such school. He has never resided in or practiced his profession in the State of California. His only medical study and education was received by his study and attendance in accredited Osteopathic Colleges, which led to his being granted the degree of Doctor of Osteopathy. All of the physicians who passed upon plaintiff's qualifications to receive the degree of Doctor of Medicine were, themselves, Doctors of Osteopathy who received the degree of Doctor of Medicine in essentially the same manner as did plaintiff.

Plaintiff bases his right to have entered on his Physician and Surgeon license the degree of Medical Doctor, on the fact that he has had issued to him such a degree by the California College of Medicine. He contends that he is absolutely entitled to the relief sought under the clear provisions of Sec. 334.047 RSMo 1959, V.A.M.S.

The Board and Intervenors contend that such relief should be denied because the provisions of Sec. 334.031 and 334.047 RSMo 1959, V.A.M.S., when read together, do not authorize the entry demanded for the reason that plaintiff is not "entitled" to the degree of Medical Doctor, he never having earned such a degree in the manner contemplated by the provisions of the Statutes.

■ By Senate Bill 50, Laws, Missouri, 1959, the Legislature repealed Chapters 334 & 337, RSMo 1959, as they then existed, and enacted a new code on the subject here considered. This code appears in full as Chapter 334, RSMo 1959; Chapter 334, V.A. M.S., Vol. 17, 1964, Cumulative Annual Pocket Part. The sections above referred to constitute a part of the code, all having been enacted at the same time. They are, therefore, in *pari materia,* and must be read

and construed together. Hull v. Baumann, 345 Mo. 159, 131 S.W.2d 721–725. Effect should be given to all provisions, if possible, as was intended by the Legislature.

Sec. 334.031, supra, prescribes the qualifications of candidates for licenses. They are, in part, as follows:

*"QUALIFICATIONS OF CANDIDATES FOR LICENSES*

"1. * * * They shall also furnish satisfactory evidence of having attended throughout at least four terms of thirty-two weeks of actual instructions in each term and of having received a diploma from some reputable medical college or osteopathic college *that enforces requirements of four terms of thirty-two weeks for actual instruction in each term,* including * * * (emphasis ours).

Sec. 334.047, supra, provides in part, as follows:

*"LICENSE TO SHOW DEGREE HELD BY LICENSEE*

"1. On the licenses issued by the board, the board shall enter after the name of the licensee the degree to which the licensee is entitled *by reason of his diploma of graduation from a professional school* approved and accredited as reputable by the American Medical Association and approved or accredited as reputable by the American Osteopathic Association.

"2. A Licensee under this chapter shall, in any letter, business card, advertisement, prescription blank, sign, or public listing or display of any nature whatsoever, *designate the degree to which he is entitled by reason of his diploma of graduation* from a professional school approved and accredited as reputable by the American Medical As-

sociation or approved and accredited as reputable by the American Osteopathic Association." (emphasis ours).

From the language used the Legislature clearly intended that applicants for license as physicians and surgeons should have shown on their license the degree *to which they were entitled* by *graduation* from a reputable college, to-wit: Medical Doctor *or* Doctor of Osteopathy, depending upon which school they attended and from which they graduated. That is the interpretation of all physician and surgeon members of the Board, which consisted of both D.O.'s and M.D.'s. That construction is supported here by both the Missouri State Medical Association and the Missouri Association of Osteopathic Physicians and Surgeons.

It is a matter of common knowledge that, historically, these two methods of practicing the healing arts have been taught in separate schools and courses of training in Missouri. State ex rel. Crow v. National School of Osteopathy, 76 Mo.App. 439–442, et seq. They still are. Each group maintains a standard of ethics and regulations for enforcement thereof. By their appearance here, they both evidence a desire to continue this policy. It is evident, by our general statutory law, that it is the public policy of Missouri to encourage self-government and self-determination by the members of our numerous organized guilds, labor unions, trades and professions, in so far as is consistent with the best interests of the public.

In enacting Chapter 334, supra, the Legislature intended to follow that pattern. It could not have had in mind the unification of these two branches of the healing arts, in the State of California, two years thereafter, nor that such contract of unification would be later implemented by California Statute. Public policy of Missouri, as evidenced by duly enacted legislation, may not be amended by action taken by professional organizations located in foreign states, nor by the action of the legislatures of such states.

In State ex rel. Granville v. Gregory, et al. (State Board of Health) 83 Mo. 123, the court considered and discussed the authority of legally established medical schools and colleges to issue degrees, and said, l. c. 130:

"* * * Among the incidents and consequences which have been customary with institutions of this character are those of conferring *degrees* upon those of the students who, *having pursued the curriculum have graduated,* and the *issuance to them of diplomas bearing evidence of that fact.* This has been done by such institutions since the thirteenth century. 2 Kent Com. 270. A diploma is said to be 'a document bearing record of a degree conferred by a literary society or educational institution'. Webst. Dict. In short, a statement in writing, under the seal of the institution, setting forth that the student therein named has attained a certain rank, grade or *degree in the studies he has pursued.* * * *". (emphasis ours).

And in State ex rel. Crow v. National School of Osteopathy, supra, 76 Mo.App. l. c. 443, this court said:

"A careful reading of this statute forces the conclusion, that by it the legislature *meant to impose, as a condition precedent to the issue of a diploma, that the graduate must have attended four terms of not less than five months each * * *".* (emphasis ours).

The court condemned the practice by defendant school officials of issuing a diploma

to one who had never attended the school. It was held that, in order to be legally entitled to receive a diploma, one must have "been in personal attendance as a student of such school for at least four terms * * * before graduation".

No doubt, the members of the legislature were conversant with the general practice by established and reputable Colleges of Medicine and of Osteopathy in this respect. If so, they would have expected that no diploma of graduation, or degree of D.O. or of M.D., would be issued to anyone who had not attended such college and pursued a course of study therein for four terms of at least thirty-two weeks per term; that no such degree would be issued to one who had never attended such college and had never been *graduated* therefrom, *never having pursued any course* of study therein. The Legislature, no doubt, relied on the custom and practice, in this matter, which had existed for more than seven hundred years.

The Board had the power and duty to look beyond the seal and ribbons of the diploma to determine whether or not it was a diploma such as is contemplated by the law of *Missouri*, and such a degree as plaintiff was *"entitled"* to have received. To hold otherwise would be to say that the Board, as a public body with a trust to perform must, in some cases, blunder about in Stygian darkness like a blinded Cyclops, unable to intelligently perform its duties and protect the public health.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.