380 F.Supp. 1137 (1974)
George J. L. WULFF, Jr., M. D., and Michael Freiman, M. D., Plaintiffs,
v.
The STATE BOARD OF REGISTRATION FOR the HEALING ARTS and Thomas E. Singleton, Chief of Bureau of Medical Services, Division of Welfare State Department of Public Health and Welfare, Defendants.
No. 73 C 731(A).
United States District Court, E. D. Missouri, E. D.
May 31, 1974.
*1138 Frank Susman, Susman, Willer & Rimmel, St. Louis, Mo., for plaintiffs.
John D. Danforth, Atty. Gen., and Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, Mo., for defendant Thomas E. Singleton.
Albert J. Stephan, Jr., St. Louis, Mo., for defendant Missouri State Bd. of Registration for the Healing Arts.
Before WEBSTER, Circuit Judge and MEREDITH and HARPER, District Judges.

MEMORANDUM
This matter is before the Court on motion of defendant, State Board of Registration for the Healing Arts (hereinafter referred to as State Board), to dismiss Counts I and III of the plaintiffs' complaint, and on motion of defendant, Thomas E. Singleton, to dismiss Count II of plaintiffs' complaint. Counts I and III name the State Board as defendant and Count II names Thomas E. Singleton as defendant.
Plaintiffs, George J. L. Wulff, Jr. and Michael Freiman, are physicians licensed by the State of Missouri, engaging in the practice of obstetrics and gynecology. Defendant, State Board, is an administrative board created by Missouri state statutes charged with the licensing of physicians. The State Board has the *1139 power to revoke or suspend a physician's license for unprofessional and dishonoraable conduct under RSMo 334.100. Defendant, Thomas E. Singleton, is the Chief of the Bureau of Medical Services, Division of Welfare, State Department of Public Health and Welfare, for the State of Missouri. In his capacity as Chief of the Bureau of Medical Services, Singleton oversees the applications, approvals, denials and payments of claims for payment and reimbursement of medical expenses arising from or related to the procedure of abortion for women eligible for Missouri State Medicaid assistance.
The plaintiffs' complaint for declaratory judgment and injunctive relief alleges jurisdiction in this Court under 28 U.S.C. §§ 1343, 2201, 2202, 2281, 2284 and 42 U.S.C. § 1983, and prays for the convening of a three-judge court under 28 U.S.C. § 2281, and for declaratory and injunctive relief in all three counts of their complaint.
Plaintiffs allege that the statutory wording "but excluding abortion" contained in RSMo 431.061[1] (Count I), "shall not include abortions unless such abortions are medically indicated" contained in RSMo 208.152 (Count II) and "pregnancy" contained in RSMo 431.061 (Count III) are unconstitutional. Plaintiffs allege that the above statutory wording in each count is vague and uncertain, deprives the plaintiffs and their patients of the right to privacy, deprives plaintiffs of their right to practice medicine according to the highest standards of medical practice, deprives plaintiffs' patients of the fundamental right of a woman to determine for herself whether to bear children, infringes upon plaintiffs' right to render and their patients' right to receive safe and adequate medical advice and treatment, deprives plaintiffs and their patients of the equal protection of the law and due process of law, and constitutes state interference with the abortion decision, all of which is in violation of the United States Constitution.
The contentions relied upon by the defendant State Board to sustain its motion to dismiss Counts I and III may be summarized as follows:
(1) Plaintiffs failed to state a claim upon which relief can be granted.
(2) The State Board is not a proper party defendant.
(3) Plaintiffs failed to allege the existence of a "controversy".
(4) Plaintiffs failed to allege enforcement by the State Board of the challenged statute and therefore the court should abstain from interpreting the state statute.
(5) There is relief available to plaintiffs in state courts and agencies.
The grounds relied upon by defendant Singleton to sustain his motion to dismiss Count II may likewise be summarized as follows:
(1) The declaratory relief prayed for does not constitute a "case or controversy ripe" for determination by this Court.
(2) Plaintiffs lack standing to litigate the constitutional questions presented.
(3) Injunctive relief cannot be granted in that the plaintiffs are not susceptible to irreparable harm by virtue of enforcement of the challenged statute.
(4) Plaintiffs have not exhausted administrative remedies.

*1140 (5) Plaintiffs could not personally suffer harm for which relief can be granted under 42 U.S.C. § 1983.

COUNT I
RSMo 431.061 (see Footnote 1), which plaintiffs seek to attack in Counts I and III, was enacted in 1971 by the Missouri General Assembly as Section 1 of House Bill 73 and must be read and construed in connection with RSMo 431.062[2] and 431.063,[3] which were Sections 2 and 3 of House Bill 73. Mitchem v. Perry, 390 S.W.2d 600, 603 (Mo.App.1965). When so read and construed it is apparent that RSMo 431.061 only relates to minors' ability to contractually bind themselves to pay for medical treatment for pregnancy, venereal disease and drug abuse. It is true that under RSMo 431.061(1) the treatment for pregnancy for which an unmarried minor may contractually bind herself excludes abortions. The effect of this exclusion is simply to leave the law unchanged as it relates to contracts for abortion. That is to say that a minor may not be held contractually liable for the cost of receiving an abortion unless she ratifies the debt contracted after she reaches majority. RSMo 431.060. This does not constitute a prohibition against giving abortions to minors.
Neither the statute under attack, RSMo 431.061, nor the two statutes enacted as part of the same bill (RSMo 431.062 and 431.063) provide any sanctions for the performance of an abortion on an unmarried minor without parental consent. In fact, Missouri does not in light of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and Rodgers v. Danforth, Civ. No. 18360-2 (W.D.Mo.),[4] affirmed 1973, 414 U.S. 1035, 94 S.Ct. 534, 38 L.Ed.2d 327, at this time have sanctions for abortions performed on adults or minors as long as the abortionist is a licensed physician.
Plaintiffs contend in their affidavits filed in opposition to the defendants' motions to dismiss that they fear reprisals from the defendant State Board, in that the State Board may discipline them under RSMo 334.100 based upon their past performances of abortions and anticipated future performances of abortions upon unmarried minors, without parental consent, on a non-emergency basis. RSMo 334.100 provides, in part, that a licensee may be placed on probation or the license suspended or revoked when a physician is found guilty of unprofessional or dishonorable conduct. *1141 That statute then continues, stating:
"Without limiting the foregoing general language, the following specifications shall be deemed unprofessional and dishonorable conduct within the meaning of this section:
* * * * * *
"(3) Committing an unlawful abortion;"
As pointed out above, since the decisions in Wade, Bolton and Rodgers, supra, and the failure of the Missouri Legislature to enact a statute within permissible limits of those cases, Missouri no longer has any prohibition against abortion, when it is performed by a physician. Therefore, any abortion performed by a licensed physician is not an unlawful abortion. What plaintiffs seek in reality is a declaratory judgment by this Court that the performance of an abortion by a licensed physician on an unmarried minor without parental consent on a non-emergency basis is not unprofessional and dishonorable conduct under RSMo 334.100.
In order for this Court to rule on the constitutionality of the statutory wording "but excluding abortion" in RSMo 431.061 under the Declaratory Judgment Act, 28 U.S.C. § 2201, as prayed for in plaintiffs' complaint, there must exist an "actual controversy" between the parties and without such actual controversy this Court is without power to grant declaratory relief. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), the Supreme Court said:
"`[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues "concrete legal issues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field.' United Public Workers of America v. Mitchell, 330 U.S. 75, 89, [67 S.Ct. 556, 564, 91 L.Ed. 754] (1947). `The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, [61 S.Ct. 510, 512, 85 L.Ed. 826] (1941)."
From the foregoing, it is clear that the ingredients necessary to sustain a complaint for declaratory judgment are: (a) a substantial controversy; (b) between parties having adverse legal interests; and (c) the controversy must possess "immediacy and reality." The plaintiffs here do not claim that they have ever been threatened with disciplinary action by the State Board or that disciplinary action by the State Board is even likely. The most that can be said of the plaintiffs is that they feel uneasy or inhibited in performing abortions on minors without parental consent. The mere possibility or even probability that the plaintiffs may sometime in the future be adversely affected by a disciplinary action of the State Board not yet threatened does not create an "actual controversy" which is a prerequisite created by the clear language of the Declaratory Judgment Act. Garcia v. Brownell, 236 F.2d 356 (9th Cir. 1956), cert. denied, 362 U.S. 963, 80 S.Ct. 880, 4 L. Ed.2d 878 (1960).

COUNT II
In Count II plaintiffs challenge the constitutionality of the statutory wording, "shall not include abortions unless such abortions are medically indicated," *1142 contained in RSMo 208.152(12). The pertinent portions of RSMo 208.152 are as follows:
"Benefit payments for medical assistance may be made on behalf of those eligible needy persons who are unable to provide for it in whole or in part, with any payments to be made on the basis of the reasonable cost of the care or reasonable charge for the services as defined and determined by the division of welfare unless otherwise hereinafter provided, for the following:
* * * * * *
"(12) Family planning services are defined by federal rules and regulations provided, however, that such family planning services shall not include abortions unless such abortions are medically indicated."
As established by the above statute, the medical reimbursements for medical assistance in the area of "medically indicated" abortions are made on behalf of those eligible needy persons who are unable to provide for it in whole or in part. Since the medical payments are made "on behalf" of the needy individual, there can be no argument but that the welfare recipient is the intended beneficiary of this statutory section. It is the welfare recipients and not their physicians who by Federal Title 45, Public Welfare Chapter II, Social Rehabilitation Services (Federal Register, Vol. 38, No. 157, Wed., August 15, 1973) under part 205.10(a)(5) are granted a right to a hearing if their claims for medical reimbursement assistance are denied and it is the welfare recipients who are afforded the right to appeal such decisions through the administrative process required by federal regulation and established under RSMo 208.156. This raises the question as to whether the plaintiffs have standing to litigate the constitutionality of the statute here in question.
Plaintiffs state in their affidavits filed in opposition to defendant Singleton's motion to dismiss that they have provided and anticipate providing abortions to welfare patients who are eligible for Medicaid payments for medical assistance, and that those patients who have submitted applications for such payments have been refused and that they anticipate future refusals by defendant Singleton based upon the challenged language in RSMo 208.152. Plaintiffs further state that such refusals by defendant Singleton deter plaintiffs from the practice of medicine in the manner they consider to be most expert and beneficial to their patients.
Plaintiffs cite Doe v. Scott, 321 F. Supp. 1385 (N.D.Ill.1970); Roe v. Wade, supra, and Doe v. Bolton, supra, as authority for their contention that they have standing to litigate the constitutionality of RSMo 208.152. Doe v. Scott, supra, was an action for declaratory and injunctive relief brought to declare an Illinois criminal abortion statute unconstitutional. The plaintiff-physicians in Scott alleged that the existence of the Illinois criminal abortion statute interfered with and adversely affected their ability to conduct their medical practices with proper regard for their patients' best interests. The district court in Scott, 321 F.Supp. l.c. 1387-88 held:
"[T]he physician-plaintiffs have standing to raise the claims of their patients even if we assume that no independent claim of theirs could withstand a motion for judgment on the pleadings."
The court in Scott cited Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), as supporting authority for its decision that the plaintiff-physicians had standing to raise the claims of their patients with respect to the constitutionality of the Illinois abortion statute.
In Griswold v. Connecticut, supra, the appellant-physician had been convicted as an accessory for giving information and medical advice on how to prevent conception in violation of a Connecticut statute making it a crime for any person *1143 to use any drug or article to prevent conception. In relation to the appellant-physician's standing, the Supreme Court said, 381 U.S. l. c. 481, 85 S.Ct. l. c. 1679:
"We think that appellants have standing to raise the constitutional rights of the married people with whom they had a professional relationship. Tileston v. Ullman, 318 U.S. 44 [63 S.Ct. 493, 87 L.Ed. 603], is different, for there the plaintiff seeking to represent others asked for a declaratory judgment. In that situation we thought that the requirements of standing should be strict, lest the standards of `case or controversy' in Article III of the Constitution become blurred. Here those doubts are removed by reason of a criminal conviction for serving married couples in violation of an aiding-and-abetting statute. Certainly the accessory should have standing to assert that the offense which he is charged with assisting is not, or cannot constitutionally be a crime."
In Barrows v. Jackson, supra, a white defendant who was a party to a racially restrictive covenant was being sued for damages by the covenantors because she had conveyed her property to Negroes. The defendant was allowed to raise the issue that enforcement of the covenant violated the rights of prospective Negro purchasers to equal protection of the law, although no Negro was a party to the suit. The Supreme Court said, 346 U.S. l. c. 255-256, 73 S.Ct. l. c. 1034:
"Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party. Reference to this rule is made in varied situations. See Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 149-154 [71 S.Ct. 624, 636-639, 95 L.Ed. 817] (concurring opinion). The requirement of standing is often used to describe the constitutional limitation of the jurisdiction of this Court to `cases' and `controversies'. See Coleman v. Miller, 307 U.S. 433, 464 [59 S.Ct. 972, 986, 83 L.Ed. 1385] (concurring opinion).
Apart from the jurisdictional requirement, this Court has developed a complementary rule of self-restraint for its own governance (not always clearly distinguished from the constitutional limitation) which ordinarily precludes a person from challenging the constitutionality of state action by invoking the rights of others. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-348 [56 S.Ct. 466, 482-483, 80 L.Ed. 688] (concurring opinion). The common thread underlying both requirements is that a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation. This principle has no application to the instant case in which respondent has been sued for damages totaling $11,600, and in which a judgment against respondent would constitute a direct, pocketbook injury to her."
The Supreme Court went on to say in relation to its rule on standing, l. c. 257, 73 S.Ct. l. c. 1035:
"This is a salutary rule, the validity of which we reaffirm. But in the instant case, we are faced with a unique situation in which it is the action of the state court which might result in a denial of constitutional rights and in which it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court. Under the peculiar circumstances of this case, we believe the reasons which underlie our rule denying standing to raise another's rights, which is only a rule of practice, are outweighed by the need to protect the fundamental rights which would be denied by permitting the damages action to be maintained. Cf. Quong Ham Wah Co. v. Industrial Acc. Comm., 184 Cal. 26, 192 P. 1021, 12 A.L.R. 1190.
Roe v. Wade, supra, and Doe v. Bolton, supra, the other two cases relied upon by plaintiffs in the instant case to *1144 support their contention that they have standing, are somewhat similar in that they both attack the constitutionality of state criminal abortion statutes. In Roe v. Wade, supra, the Supreme Court held that plaintiff-physician in Wade was under indictment for violating the Texas criminal abortion statute and the Supreme Court dismissed his complaint and remitted him to his defenses in the state criminal proceedings against him where he could raise the constitutionality of the statute under which he was charged. In Doe v. Bolton, supra, the plaintiff-physicians alleged that the Georgia criminal abortion statute chilled and deterred them from practicing their profession. The Supreme Court in holding that the plaintiff-physicians had standing said, 410 U.S. l. c. 188, 93 S.Ct. l. c. 745:
"[T]he physician-appellants, who are Georgia-licensed doctors consulted by pregnant women, also present a justiciable controversy and do have standing despite the fact that the record does not disclose that any one of them has been prosecuted or threatened with prosecution, for violation of the State's abortion statutes. The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."
In the instant case, the plaintiff-physicians have not been convicted as accessories to a criminal offense as the plaintiff-physician was in Griswold v. Connecticut, supra. The plaintiff-physicians here do not present a unique situation such as was presented to the court in Barrows v. Jackson, supra, and they are not being sued for damages as in Barrows, where a judgment against them would constitute a direct pocketbook injury. Also in Barrows, the Supreme Court felt it would be difficult if not impossible for the Negroes whose rights were being asserted by the defendant therein to present their grievance before any court. This is not the situation here for in the instant case the persons whose rights the plaintiffs are really asserting (their patients who are eligible to receive Medicaid payments) have a statutory right to a hearing before a state agency as stated above where they can present their grievance and if not satisfied they can carry their grievance on to the appropriate court. Neither are the plaintiff-physicians herein subject to the direct operation of any criminal anti-abortion statute as the plaintiff-physicians were in Roe v. Wade, supra, and Doe v. Bolton, supra, and, therefore, cannot assert a sufficiently direct threat of personal detriment as the plaintiff-physicians in those cases could. The only possible detriment the plaintiffs in the instant case can suffer under their contentions in Count II is the possibility that their patients who are eligible for medical assistance under RSMo 208.152 will not be able to pay for the services the plaintiffs have rendered to them in giving them an abortion operation.
Keeping in mind that it is the welfare recipient in whose behalf medical assistance payments under RSMo 208.152 are made and that it is the welfare recipients and not their physicians who have a right to a hearing if their medical assistance claims are denied, and that the plaintiff-physicians are not prohibited from performing abortions, this Court finds that the standing requirement of Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), that there be a logical nexus between the status asserted by the plaintiffs and the claim they seek to have adjudicated is not satisfied by the litigative posture of the plaintiff-physicians herein, and, therefore, they lack standing to challenge the constitutionality of the statute in question here. This is not to say that the issue the plaintiffs bring to this Court is not justiciable, but is only to say that *1145 these plaintiffs are not the proper parties to request an adjudication. Flast v. Cohen, supra.

COUNT III
Plaintiffs contend that the word "pregnancy" in RSMo 431.061 is vague and ambiguous and if it is interpreted, construed and applied to exclude the giving, prescribing and providing of contraceptive devices to minors without parental consent then it would be subject to all of the constitutional defects alleged in Count I.
It is apparent from the plaintiffs' pleadings in Count III that the plaintiffs do not present an actual controversy in Count III as required under the Declaratory Judgment Act. Therefore, this Court's reasoning in relation to Count I and the law applied there equally applies here in Count III.
In view of this Court's findings it is not necessary to discuss the defendants' remaining contentions.
Accordingly, for the reasons above stated, the motion of the defendant, State Board, to dismiss Counts I and III for lack of controversy, and the motion of defendant Singleton to dismiss Count II for lack of standing, are sustained.
The Clerk of the Court will prepare and enter the proper order dismissing the case.

APPENDIX
IN THE UNITED STATES DISTRICT
 COURT FOR THE WESTERN
 DISTRICT OF MISSOURI
 WESTERN DIVISION
SAMUEL U. RODGERS, M. D.,
et al.,
 Plaintiffs,
 vs.
JOHN C. DANFORTH, Attorney
General of the State of
Missouri, et al.,
 Defendants.
 Civil Action
 No. 18360-2
 Filed May 18, 1973

MEMORANDUM OPINION AND JUDGMENT
This complaint attacked the constitutionality of Missouri criminal abortion statutes. The basic statute, Section 559.100, Missouri Revised Statutes, 1959, as amended, declares the production of all miscarriages and abortions a felony "unless the same is necessary to preserve her (the mother's) life or that of an unborn child," with different penalties for the death of a "quick" and "unquick" foetus. The complaint sought both declaratory and injunctive relief.
Because of the prayer for injunctive relief, a three-judge federal court was convened under the provisions of Title 28, U.S.C. Section 2281.
A motion to intervene was filed by "Baby Doe" and an M.D. on behalf of all unborn children "who will or may be adversely affected by the action before this court."
The defendant named in the original complaint was the Attorney General of Missouri, in his official capacity, and later, by an amended complaint, the Prosecuting Attorney of Jackson County, Missouri, was added as a party defendant, who was made the class representative of all prosecuting attorneys in Missouri, by subsequent court order.
The Court then granted the motion of the defendants to dismiss this action on the sole grounds of abstention, and ordered the cause dismissed without prejudice. The plaintiffs appealed this judgment to the Supreme Court.
While the appeal was pending, that Court decided the cases of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and remanded this case to this Court "for further consideration in light of" these two cases.
After the remand, the defendants filed an answer denying the existence of a justiciable controversy and alleging that the attacked statutes are justified by compelling state interests, to-wit: the protection of human life and the *1146 protection of potential human life. The answer requested a jury trial under either Rule 38 or 39, Federal Rules of Civil Procedure.
The plaintiffs filed a motion for summary judgment based on affidavits of two of the plaintiffs who are medical doctors, and a third person who is Executive Director of Suicide Prevention, Inc., a United Fund agency in St. Louis.
The defendant Attorney General has filed lengthy suggestions in opposition to the motion for summary judgment, accompanied by the affidavit of an M.D. which controverts affidavits filed by plaintiffs as to the "chilling effect" of Missouri abortion statutes on the practice of their profession by doctors in Missouri.
The argument of the Attorney General of Missouri is that in Roe v. Wade, supra, the Supreme Court did not determine "whether an unborn child is human life"; that this is a question of fact which can only be determined by triers of the fact after hearing evidence from expert witnesses; that if human life exists from the moment of conception the State has a compelling interest to protect this life; and that summary judgment cannot be granted when such an issue of fact exists.
This Court finds that the teachings of Roe v. Wade, supra, completely contradict this argument. The opinion stated that the "existence of life from the moment of conception" is the official belief of the Catholic Church, of many non-Catholics, and "a view strongly held . . . by many physicians."
But, the opinion states, "We need not resolve the difficult question of when life begins." No statement could be clearer. Whether life begins at conception, at quickening, at viability, or at birth (the alternatives discussed in the opinion), the Court held that resolution of this question would not affect the decision.
The defendants' prayer for trial of the factual issue of "when life begins" is denied.
The lack of justiciable controversy issue raised by the answer is fully discussed and ruled upon in the case of Doe v. Bolton, supra. That case holds:
"We conclude, however, that the physician-appellants, who are Georgia-licensed doctors consulted by pregnant women, also present a justiciable controversy and do have standing despite the fact that the record does not disclose that any of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."
Four of the plaintiffs in this case are eminent Missouri-licensed obstetricians and gynecologists, and their standing as plaintiffs, under the teachings of Doe v. Bolton cannot be questioned.
In Roe v. Wade the Court quoted from the Texas statute it found unconstitutional and stated, "Similar statutes are in existence in a majority of the States.2" Footnote 2 lists "Mo.Rev. § 559.100 (1969)."
There can be no question that this Missouri statute referred to in that opinion is unconstitutional under the teachings of the two Supreme Court cases which we were mandated to consider. The other two statutes attacked are based upon the validity of § 559.100 and must similarly be held unconstitutional. The plaintiffs' motion for summary judgment will be granted.
In both Roe v. Wade and Doe v. Bolton the Supreme Court affirmed the lower court's granting of a declaratory judgment and denial of injunctive relief, stating in both cases that the Court would assume that the state prosecutorial authorities would give full recognition and credence to the Court's judgment as to the unconstitutionality of the State statute.
In this case the defendant Attorney General has not given "full recognition" or "credence" to the ruling of the Supreme Court. It does not appear that a declaratory judgment in this case, in view of the Attorney General's publicly stated position, will suffice to guarantee *1147 the constitutional rights of pregnant women and their consulting doctors as decided by the Supreme Court, and, it is therefore
Ordered that the defendant Attorney General of the State of Missouri, and the defendant class of all Prosecuting Attorneys in the State of Missouri be, and they hereby are, enjoined from instituting any criminal prosecutions, complaints for warrants, or complaints for search warrants under, or by authority of, unconstitutional Sections 542.380(3), 559.100, or 563.300, Revised Statutes of Missouri, 1969. Costs taxed to defendant Attorney General in his official capacity.
(s)
 Floyd R. Gibson, Circuit Judge
(s)
 Elmo B. Hunter, District Judge
(s)
 William R. Collinson, District
 Judge
NOTES
[1] 431.061. Minors, treatment of certain conditions and diseases authorized.

Any physician, surgeon, any institution or facility of the state department of health, a municipal health department, or any public or private hospital may provide examination, treatment, hospitalization, medical and surgical care for any person under the age of twenty-one years, for;
(1) Pregnancy, but excluding abortion;
(2) Venereal disease;
(3) Drug or substance abuse including those referred to in chapter 195, RSMo. 1969.
[2] 431.062. Minor cannot disaffirm contract, when  parents or guardian not liable, exception  disclosure by physician authorized, when

Whenever a minor is examined, treated, hospitalized, or receives medical or surgical care under section 461.061:
(1) His consent shall not be subject to disaffirmance or revocation because of minority;
(2) The parent, parents, or legal guardian shall not be liable for payment for such care unless the parent, parents, or legal guardian has expressly agreed to pay for such care;
(3) A physician or surgeon may, with or without the consent of the minor patient, advise the parent, parents, or legal guardian of the examination, treatment, hospitalization, medical and surgical care given or needed if the physician or surgeon has reason to know the whereabouts of the parent, parents, or legal guardian. Such notification or disclosure shall not constitute libel or slander, a violation of the right of privacy or a violation of the rule of privileged communication. In the event that the minor is found not to be pregnant or not afflicted with a venereal disease or not suffering from drug or substance abuse, then no information with respect to any appointment, examination, test or other medical procedure shall be given to the parent, parents, legal guardian or any other person.
[3] 431.063. Minor's consent legally binding, when

Any person, under the age of twenty-one years, who is examined, treated, hospitalized or who receives medical or surgical treatment under sections 431.061 to 431.063 may give legal consent, and no person who administers such medical or surgical treatment shall be liable, except for negligence, for treating such minor without advising the parent, parents, or legal guardian.
[4] See Appendix.